## DILLAWAY V. PETERSON *et al.*

1. Trustees of a church in 1890, executed a joint note, secured by mortgage to plaintiff on the church property. In 1891, defendant, one of the trustees, purchased the property, and assumed the mortgage, and notified plaintiff that he had done so. Before the note matured, plaintiff not desiring the money, an extension of payment was arranged with defendant at the same rate of interest, for one year; and before its maturity, another extension was made; and defendant continued to pay the interest to plaintiff. Since defendant's purchase, plaintiff corresponded with him exclusively, and made all extensions with him, and recognized him as liable for the debt, and made no reference to the other trustees, except in 1895, when, learning that the property had depreciated in value, she inquired of defendant if the other trustees were still liable. At the time the debt first matured, the property was ample to satisfy the same, and defendant owned considerable property; but at the time the action to foreclose was brought, the property was insufficient to pay the debt, and defendant was insolvent. *Held*, that the trustees were discharged by the extensions from liability on the note for any deficiency arising on the sale.

2. Defendant purchased church property for $15,000, subject to plaintiff's mortgage of $8,000, the difference between the price and the mortgage being furnished by S. Defendant also purchased from S. a farm for $6,000, and the payment of both sums was secured by mortgage on the properties. Defendant S. agreed that after the properties were sold by defendant, and the mortgages paid, whatever profit remained should be divided between them. S. Was not recognized in any manner in the transaction, and had no control over the premises, and plaintiff was not aware of his existence until shortly before the action to foreclose the mortgage was brought, which was a number of years after defendant's purchase, and from which time plaintiff had recognized only him as responsible for the debt. *Held*, that S. was not a partner of defendant, so as to make him liable for a deficiency arising on the sale of the church property to satisfy the mortgage.

(Opinion filed October 18, 1898.

Appeal from circuit court, Minnehaha county. Hon. JOS-EPH W. JONES, Judge.

Action by Melissa J. Dillaway against George R. Peterson, John H. Chapman, and others, to foreclose a mortgage. From a judgment in favor of plaintiff against Chapman only, she appeals. Affirmed.

The factss are stated in the opinion.

*U. S. G Cherry,* for appellant.

The agreement between the defendants Chapman and Spalding contains all the elements of a partnership agreement and constituted them co-partners. They both became equally liable upon any indebtedness or obligation incurred by either in the proper pursuit of the enterprise. Corey v. Caldwell, 49 N. W. 611; Purvis v. Butler, 49 N. W. 564; Parker v. Canfield, 37 Conn. 250; Compiled Laws, §§ 4027, 4033; Wood v. Valette, 7 Ohio St. 172; Rosenfield v. Haight, 53 Wis. 260; Upham v. Hewitt, 42 Wis. 85; Haas v. Roat, 16 Hun. 526, 632; Williams v. Gillies, 13 Hun. 422; Bank v. Hennessey, 48 N. Y. 545; Leggett v. Hyde, 58 N. Y. 272; Manhatton v. Sears, 45 N. Y. 797; Hackett v. Stanley, 115 N. Y. 625; Magovern v. Robertson, 116 N. Y. 61; Wills v. Sinmonds, 51 How. Pr. 48; Tyler v. Waddingham, 58 Conn. 375; Dutcher v. Buck, 55 N. W. 676; Sager v. Tupper, 38 N. W. 258; Caldwell v. Miller, 17 A. 483; Edwards v. Tracey, 62 Pa. St. 374; Berthold v. Goldsmith, 24 How. 536; Ward v. Thompson, 22 How, 330; Winship v. Bank, 5 Pet. 529; Dubos v. Hoover, 6 So. 788; Southern Fertilizer Co. v. Reame, 11 S. E. 467; Morse v. Richmond, 97 Ill. 303; Bloomfield v. Buchanan, 8 P. 912; Pettee v. Appleton, 114 Mass. 114; Getchel v. Foster, 106 Mass. 42; Brigham v. Clark, 100 Mass. 430; Richard v. Grinnell, 18 N. W. 668; Runnells v. Moffatt, 41

N. W. 224; Oppenheimer v. Clemmons, 18 Fed. 886; Fitch v. Harrington, 13 Gray 468; Bank v. Altheimer, 3 S. W. 858.

The agreement between the plaintiff and the defendant Chapman for an extension of the time of payment of the note sued upon, did not release the makers of the note from liability for its payment. Early v. Burt, 28 N. W. 35; Conover v. Stillwell, 34 N. J. L. 54; Bush v. Rawlins, 14 S. E. 886; Schuler v. Myton, 29 P. 163; Widiman v. Brown, 47 N. W. 231; Ayers v. Railroad, 52 Ia. 478; Robinson v. Jewett, 116 N. Y. 40; Vanderbilt v. Schreyer, 91 N. Y. 392; Crosby v. Wood, 6 N. Y. 369; Davenport v. Society, 33 Wis. 387; Sherwin v. Brigham, 39 Ohio St. 137; Reynolds v. Nugent, 25 Ind. 328; Wadhams v. Page, 25 P. 562; Sullivan v. Sullivan, 33 P. 862; Geer v. Archer, 2 Barb. 420; Carter v. Holahan, 92 N. Y. 498; Trotter v. Hughes, 12 N. Y. 74; King v. Whitley, 10 Paige 460; Crowell v. Currier, 27 N. J. Eq. 655; Wise v. Fuller, 29 N. Y. 267; Biddle v. Brissolara, 64 Cal. 354; Jones on Mortgages, Sec. 955; Vrooman v. Turner, 69 N. Y. 280; Garnsey v. Rodgers, 47 N. Y. 233; Cushman v. Henry, 55 How. Pr. 234; Wheat v. Rice, 97 N. Y. 296; Root v. Wright, 84 N. Y. 72; Seward v. Huntington, 94 N. Y. 104; Davis v. Clinton, 54 Ia. 59; Wood v. Ayers, 39 Mich. 351; Ferris v. Carson Water Co, 16 Nev. 44; Shepherd v. May, 115 U. S. 505; Boardman v. Larrabee, 51 Conn. 39; Corbett v. Waterman, 11 Ia. 86; Keller v. Ashford, 133 U. S. 610; Byers v. Harris, 25 N. W. 819; Hunt v. Pastlewait, 28 Ia. 427; Kellogg v. Olmstead, 25 N. Y. 189; Halliday v. Hart, 30 N. Y. 474; Parmelee v. Thompson, 45 N. Y. 58; Marcellus v. Countryman, 65 Barb. 201; Reynolds v. Ward, 5 Wend. 501; Abel v. Alexander, 45 Ind. 523; Hume v. Mazelin, 84 *Id.* 574; Stickler v. Giles, 37 P. 293; McCann v. Lewis, 9 Cal. 246; 2

Parsons on Notes and Bills, 528; Gibson v. Yrby, 17 Tex. 172; Clairborne v. Birge, 42 Tex. 98; Hale v. Forbis, 3 Mont. 395; Wilson v. Rowe, 130 Mass, 127; Bank v. Torry, 73 N. W. 193; M'Lemore v. Powell, 12 Wheat 555; King v. State, 49 Am. Dec. 439; Fairchild v. Warner, 21 How. Pr. 187; Van Allen v. Jones, 10 Bosw. 1069; Moore v. Bank, 22 Mo. App. 692.

*Davis, Lyon & Gates*, and *A. B. Kittredge*, for respondents, Peterson, Gibert, Fulford and Ramsey.

The agreement between the plaintiff and the defendant Chapman for an extension of time of payment of the note released these defendants, the makers of the note, from liability thereon. 1 Beach Mod. Con., §§ 575, 73, 65, 170, 187, 172; Hendricks v. Lindsay, 93 U. S. 143; Corbett v. Clough, 65 N. W. 1074; Niblock v. Champeny, 72 N. W. 402, 3 Am. and Eng Enc. of Law 936; Burke v. Dillon, 61 N. W. 370; McComb v. Kittredge, 14 Ohio 351; Prior v. Hunter, 48 N. W. 736; Colman v. Eyre, 45 Ny. Y. 38; Bak v. Sabin, 48 Vt. 239; Benson v. Phipps, 29 S. W. 1061; Crossman v. Wohlleben, 90 Ill. 537; Nichols v. Dedrick, 63 N. W. 1110; Moon v. Redding, 13 So. 849; Buter v. Dillon, 63 Ill. App. 517; Drescher v. Fulham, 52 Pac. 685; Fawcett v. Freshwater, 31 O. St. 637; 1 Jones Mort. §§ 741, 742; 15 Am. & Eng. Enc. of Laws 834; Locke v. Horner, 131 Mass. 93; Callender v. Edmison, 65 N. W. 425; Taylor v. Preston, 79 Pa. St. 456; Bank v. Mackey, 140 U. S. 220; Lambert v. Shilton, 32 N. W. 424; Power v. Silsberstein, 108 N. Y. 169; Hamilton v. Proutz, 7 N. W. 291; Paine v. Jones, 76 N. Y. 274; Miller v. Stewart, 9 Wheat. 680; Garnsey v. Rogers, 47 N. Y. 233; Kauffman v. Cooper, 65 N. W. 796; Siems v. Bank, 64 N. W. 167.

*A. B. Kittredge*, for respondent, Spalding.

The agreement between the defendants Chapman and Spalding was not a partnership agreement and created simply the relation of debtor and creditor between them, and nothing more. Spalding is therefore not liable on the note in suit. Thompson v. Bank, 111 U. S. 529; Brown v. Grant, 39 Minn. 404; Parker v. Fergus 43 Ill. 437; 1 Lindley on Part. p. 50; Williams v. Gillirs, 75 N. Y. 197. Jones Mort. § 1715.

FULLER, J. In this action to foreclose a mortgage on cer tain church property, executed to plaintiff by a corporation, the Board of Trustees of the First Methodist Episcopal Church of Sioux Falls, in their official capacity, to secure their joint promissory note for $8,000, given for the exclusive benefit of said corporation, plaintiff sought to obtain a deficiency judgment against each of them, and also against the defendants John H. Chapman, one of the joint obligors, and John A. Spalding, who, it is alleged, subsequently purchased the property with Chapman as a co-partner, and, as a part of the consideration, expressly assumed and agreed to pay the entire mortgage indebtedness. At the close of plaintiff's evidence, on motion of counsel for defendant Spalding, the action was dismissed as to him; and, at the conclusion of the case, upon a finding that plaintiff, for a valuable consideration, and since the execution of the deed to Chapman, had granted him an extension of the time of payment, without their knowledge or consent, all the other defendants were absolved from liability, and a decree was entered foreclosing the mortgage, and adjudging said Chapman to be the only defendant against whom execution might issue for any deficiency arising from a sale of the mortgaged premises. From that part of the judgment decreeing said

Chapman to be the only defendant personally liable for the mortgage indebtedness, or any part thereof, and from an order overruling a motion for a new trial, plaintiff appeals to this court.

The evidence upon which appellant relies to justify a deficiency judgment against the trustees as makers of the $8,000 note and mortgage, and to hold Spalding liable under Chapman's assumption of the payment thereof, as a part of the purchase price of the property, will be considered in connection with the law found to be applicable thereto. Subject to appellant's mortgage, which had not yet matured, Chapman, it appears, purchased the property from the Board of Trustees for $15,000, by assuming this mortgage, and by paying $7,000 in cash, obtained at the time from the respondent Spalding. It was shown that Chapman was a real-estate broker, and, as the agent of the church organization for the sale of the property, had full authority to dispose of the same on the terms above mentioned, and to retain $1,000 as his commission. In the spring of 1891, while visiting in the East, Chapman called upon Spalding, whom he had personally known for many years, and in the course of conversation mentioned the mortgaged premises, and described the improvements thereon, when it was suggested by Spalding that Chapman purchase the property himself for $15,000, by assuming the incumbrance thereon, and by paying the $7,000 balance in cash, which, it was agreed, Spalding should loan for that purpose, taking a second mortgage upon the property as part security. It was found at the trial that immediately, and before the note matured according to its terms, appellant was advised that Chapman had purchased the property, assuming, as part consideration therefor,

the payment of the mortgage given to secure the same; and, from numerous letters passing between said parties thereafter it clearly appears that, at her suggestion, they entered into an agreement, upon a valuable consideration, extending the time of payment for one year, without the knowledge or consent of the makers of such note and mortgage, whose relation thereto had become that of sureties, while Chapman was bound as the principal debtor. Appellant looked wholly and always to Chapman for the interest as the same matured, and, near the expiration of the time to which she had extended the note, expressed a willingness to grant further time at the same rate, as shown by the following letter: "Bath, Feb. 24–93. Mr. J. H. Chapman, Esq.— Dear Sir: I write to see what your wishes or intentions are in regard to the $8,000 loan on the old meeting house. It will be due next April 19th. Would you like to keep the money longer at the same rate of interest? If so, can you give me an idea of how long? Could you manage to give me say, three months, or so, notice before you wish to pay it? I do not need the money, and, if you are arranging to pay it, would like to loan it again at the same rate of interest, with good security, and would like for you to see what you can do for me when you get ready to pay it." In consideration of the continued payment of interest, and without the knowledge or consent of the sureties, this offer of a second extension was also accepted by Chapman in writing, under date of March 6th, as follows: "In regard to the $8,000, I should like to keep it right along at the same rate of interest as long as I hold the property. Should I sell to a party wishing to pay all cash, will give you ample notice that you may have time to invest the money in some other securiites. * * *" After the next installment of in-

terest matured according to the terms of the extended note, and on the 20th day of November, 1893, appellant's authorized agent wrote Chapman as follows: "I believe the old church property is now in your hands, and we are to look to you for the interest on the $8000 note to Melissa J. Dillaway. The interest was due October 18th, and, as we are at present short of money, it would be very acceptable." Chapman continued to remit to appellant the interest maturing semi-annually, up to and including the $280 installment due April 18, 1895; and, in all their extensive correspondence relating to the loan, neither of the other signers of the note and mortgage were ever mentioned until August of that year, when, advised that her security had greatly depreciated in value, she authorized her son to inquire of Chapman by letter "if the signers of the note, Ramsey, Peterson, Gilbert, etc., are still responsible for its payment."

As the note was made exclusively for the benefit of the church, and the signers thereof received none of its proceeds, a court of equity cannot ignore a contract for an extension clearly gatherable from the letters properly offered and received in evidence. Referring to the matter in her letter to Chapman written three days before the note became due for the first time, she inquires: "Would you like to keep the money at the same rate of interest? If so, please state some time." Promptly answering, Chapman expressed thanks for the kindness in proposing an extension of the note and accepted the proposition as follows: "I should like to keep the money for another year on the same terms." In addition to the foregoing, the record contains numerous letters passing between Chapman and appellant which conclusively show the existence

of an express agreement for a valuable consideration, enlarg-
ing the time of payment, without the knowledge or consent of
the other makers of the note;· and the court was therefore fully
justified in adjudging them discharged from all liability. Inde-
pendently of the mortgaged premises, shown at the trial to be
worth but $5,000, but which were ample security when the note
matured according to its terms, Chapman, who is now insolvent
then owned property subject to execution more than sufficient
to satisfy the entire amount collectible; and. in the absence of
concurrence on the part of the mortgagors, it wou'd be clearly
unjust to continue their liability. The rule predicated upon the
doctrine of suretyship, and almost uniformly invoked by courts
of equity, seems to be that mortgagors are released from lia-
bility for a deficiency by such agreements between mortgagees
and those assuming and agreeing to pay the mortgage indebt-
edness; and the fact that Chapman, by purchasing the prop-
erty, changed his relation from a joint obligor to principal
debtor, is not material.  1 Jones Mortg. (5th Ed.) 742; Wiltsie,
Mortg. Forec. 272; Spencer v. Spencer, 95 N. Y. 353; Insurance
Co. v. Hanford, 27 Fed. 588; Lambert v. Shelter (Iowa) 32 N.
W. 424; George v. Andrews. 45 Am. Rep. 706; Hamilton v.
Prouty, 50 Wis. 592, 7 N. W. 659; Bank v. Mackey, 140 U. S.
220: 11 Sup. Ct. 844; Burke v Dillon (Iowa) 61 N. W. 370; Bank
v. Humphrey, 6 S. D. 415, 61 N. W. 444; Corbett v Clough, 8 S.
D. 176, 65 N. W. 1074.

For the purpose of holding Spalding liable for the defic-
iency arising from the foreclosure and sale of the property, it
is alleged in the complaint that he purchased the same with
Chapman, and assumed and agreed to pay off and satisfy the
mortgage. It is therefore necessary to examine the record, and

determine his relation to the parties and subject-matter of the action.

At the time Chapman negotiated for the church property, subject to the $8,000 mortgage, and borrowed $7,000 from Spalding with which to make the cash payment, less the $1,000 commission, concerning which the latter was not advised, he also purchased from said Spalding a New Hampshire farm, the consideration being $6,000, the payment of which, together with the $7,000 thus borrowed, was secured by certain mortgages upon the farm and upon the church property above mentioned; and in connection with the transaction, the following memorandum appears to have been made:

J. H. Chapman buys meeting-house lots with build-
ings, at Sioux Falls, South Dakota, for.......... $15,000
And buys Wilton farm for....................... 6,000

$21,000

Sioux Falls property subject to mortgage of $8,000 at
7 per cent., due in two years..... .............. $ 8,000
Gives note to J. A. Spalding for $6,000, and 2nd mort-
gage on that property, and first mortgage on farm 6,000
Note for $1,000 to J. A. S.; note for $1,000 to J. A. S.;
note for $5,000 to J. A. S...................... 7,000

With 3rd mortgage on Sioux Falls property, and 2nd
on farm............... ...... ................. $21,000
J. A. S to have use of farm for interest on his $5,000 note. Other acct., that is, $8,000 here and $8,000 there; an acct. to be rendered as to income, etc., and settlement made, each to pay one-half of all lacking from income.

[Signed] J. H. CHAPMAN,
J. A. SPALDING.

The following was written on the back of the paper:

I hereby agree that, after all notes against said church property and said farm are paid, to divide equally with J. A. Spalding whatever may remain in my hands from the sale of the above mentioned property.

May 15, 1891.                    [Signed]    J. H. CHAPMAN.

The exact and only remaining question is whether the foregoing circumstances and memoranda disclose a transaction by which Spalding is made liable as a party to the covenant, by which Chapman assumed and bound himself to pay the mortgage made the subject of this action. It is very evident that the relation of debtor and creditor, and mortgagor and mortgagee, was created and still exists between Chapman and Spalding to the extent of the $7,000 loan and the $6,000 agreed upon as the purchase price of the farm, all of which Chapman undertook to pay in any event, and as a contingent matter, and further compensation, agreed to divide equally with Spalding anything in excess of such amount remaining in his hands from a sale of the property. Spalding was not named in the deed, nor in any manner recognized in the transaction, he had no control over, or power to dispose of, the premises, and appellant never relied upon him, or knew that such a person lived, until a short time before the commencement of this suit. True it is that he retained the use of the New Hampshire farm in lieu of interest on his $5,000 note, and in consideration of the right to share equally with Chapman in the rents and profits arising from the church property, agreed to pay one-half the expense of holding it, provided the income should be insufficient; but he never held himself out as a partner. And the irresistable inference is that he was never such in a sense that

Chapman, by merely accepting the deed, could render him liable to pay the mortgage indebtedness. Grigsby v. Day. 9 S. D. 585. 70 N. W. 881. The rule is that a partner cannot bind the firm in a name other than its adopted style; and the intention not to become partners will be inferred from the fact that a party is given no control over the property, although entitled to a share of the profits. In the absence of an adopted name and style, or an agreement to become partners in some specified business, one who is given no right to sell real estate, title to which is in another, and upon which he takes mortgages as security for the purchase price, and money loaned, is not made a partner, with reference to the ownership of such property, by a contingent agreement to bear certain expenses, and share in the income and profits arising from a lease or sale of such premises. Ashby v. Shaw, 82 Mo. 76; Newberger v. Friede, 23 Mo. App. 631; 1 Bates, Partn. §§ 29, 37, 199.

No credit was extended to Spalding, nor was he in any sense a grantee, and there is nothing in the record to indicate the slightest intention upon his part to assume the obligation of paying a mortgage to which he is an absolute stranger. "To create such liability, there must be such words as will clearly import that the grantee assumed the obligation of paying the debt" 1 Jones, Mortg. (5th Ed.) 748; Granger v. Roll, 6 S. D. 611, 62 N. W. 970. The evidence upon which appellant relies, while showing a community of interest, repels the idea of an obligation upon the part of Spalding, or his intention to be bound by Chapman's undertaking to pay the mortgage indebtedness. The same principle was involved in the case of Williams v. Gillies, 75 N. Y. 197, where the court declined to hold a party responsible under the following state of facts, as dis-

closed by the headnote: "D. G. & R. entered into and carried out an oral agreement to purchase certain premises on joint ac-account, each to contribute a specified portion of the purchase money; D. to take the title, and give back his bond and mort-gage for so much of the purchase money as was not paid down, the profits to be divided *pro rata.* In an action to foreclose the mortgage, a judgment for deficiency was rendered against G. *Held.* it did not appear that the name of D. was to be re-garded as the agreed name of the firm for the purpose of exe-cuting the bond, or that it represented any one but himself, and that payments on the bond by G. did not change the bond from an individual to a joint obligation." It is unecessary to pursue the subject further. The trial court correctly held respondents not liable for the deficiency, and the judgment ap-pealed from is affirmed.