FARMERS' & MERCHANTS' STATE BANK OF TRIPP, Appellant, v. TASCHE, et al, Respondents.

(222 N. W. 139.)

(File No. 6487. Opinion filed December 4, 1928.)

*Stewart Sharpe,* of Delmont, for Appellant.

*Wicks & Quinn,* of Scotland, S. D., for Respondents.

MISER, C. A partial statement of the allegations of the complaint demurred to is sufficient to present the question of its sufficiency to state a cause of action. The complaint alleges that the Tripp State Bank sold to defendants Tasche, respondents herein, a quarter section of land subject to a first mortgage of $7,000. On the day of such sale, respondents executed and delivered to the Tripp State Bank a second mortgage thereon to secure their promissory notes for $6,100, due April 1, 1924; that thereafter the Tripp State Bank, mortgagee, becoming insolvent, the superintendent of banks took charge thereof and sold to the Farmers' & Merchants' State Bank, plaintiff and appellant herein, the second mortgage and note hereinbefore mentioned; that thereafter respondents, mortgagors, sold and conveyed said premises, subject to both mortgages, to one Heihn, who assumed and agreed to pay the second mortgage of $6,100 as part of the purchase price of said land; that the holder of the first mortgage was demanding payment and threatened foreclosure; and it was agreed between appellant, assignee of the second mortgage, and Heihn, grantee of the mortgagor, that, if appellant would release the premises from the lien thereof and permit the purchaser to take said premises discharged of the said incumbrances, the purchaser would then pay appellant, to be applied on the second mortgage, the entire balance of the price received for said land after first satisfying the first mortgage; that appellant released the land from the lien of said mortgage, and Heihn sold the land for $12,343.23, which price was at that time and under the conditions then existing the full, fair, and reasonable market value of said land; that therewith the first mortgage note

was paid in full and the balance applied on the second mortgage note, reducing the amount due thereon to $1,400; that appellant was free from negligence, and found a purchaser as aforesaid at the sale price of $12,343.23 only on condition that both mortgages be released and discharged of record; that respondents were not injured but were benefited by the foregoing action of the plaintiff; and that there remains a balance of $1,400 justly due appellant from respondents, for which plaintiff, appellant, demands judgment. The complaint further alleges that each and all of the transfers hereinbefore mentioned were duly and promptly recorded; and it may be assumed for the purpose of this decision, although we do not decide, that the complaint sufficiently alleges that the plaintiff is an indorsee in due course of the note, and that the second mortgage securing the same was duly assigned by the mortgagee to appellant.

In Hampe v. Manke, 28 S. D. 501, 134 N. W. 60, following Miller v. Kennedy, 12 S. D. 478, 81 N. W. 906, and Dillaway v. Peterson, 11 S. D. 210, 76 N. W. 925, and other authorities therein cited, this court held that:

"Where a mortgagor conveys the mortgaged property, and the grantee assumes the payment of the mortgage, the grantee becomes the principal debtor, and the mortgagor becomes a surety; and the mortgagee, when advised of the transfer and the assumption of the debt by the grantee, must recognize the relation between the mortgagor and his grantee in his dealings with the property."

When, therefore, appellant, ignoring respondents as the makers of the note which appellant then held, agreed with Heihn to satisfy the mortgage securing the same, providing Heihn would turn over to appellant the balance of the sale price, appellant dealt with Heihn as the principal on the debt and treated respondents as sureties.

Does it follow that respondents were entirely released as they contend, or were they released pro tanto, as appellant contends, that is to the extent of the value of the land over and above the first mortgage? This presents a more difficult question. It should be observed that, in the complaint demurred to, it is alleged:

"That the defendants were not injured, but on the contrary were benefited by the foregoing action of the plaintiff [in releasing the mortgage in order to obtain the proceeds of the private sale]."

But respondents contend that it is not enough that appellant got and applied on the note all the land was worth; that, if respondents pay the note which Heihn assumed and agreed to pay, respondents will be entitled to be subrogated to appellant's security which appellant released without respondents' consent.

This court has repeatedly held that, where a grantee assumes and agrees to pay a mortgage on the premises, an extension of time of payment given by the holder of the mortgage to the grantee without the consent of the grantor or mortgagor, if binding and given after knowledge of the grantee's liability for the indebtedness, will discharge the grantor or mortgagor. Hampe v. Manke, supra; Miller v. Kennedy, supra; Dillaway v. Peterson, supra; Iowa Loan Co. v. Schnose, 19 S. D. 248, 103 N. W. 22, 9 Ann. Cas. 255. This is the general, though not universal rule. Wiltsie, Mortgage Foreclosure (4th Ed.) § 244. But this court has not heretofore passed upon the effect of satisfaction of such a mortgage by such a mortgagee upon the liability of such a mortgagor. Generally, however, it is held that such a satisfaction releases such a mortgagor. 19 R. C. L. § 159, p. 386, citing Heidahl v. Geiser, 112 Minn. 319, 127 N. W. 1050, 140 Am. St. Rep. 493. It is true, as appellant points out, that in the case cited the trial court found that the real estate exceeded in value the amount of the mortgage. But the syllabus, which was prepared by the court, and which fairly summarizes the decision, is as follows:

"When real estate is conveyed subject to a mortgage, and the grantee assumes payment of the mortgage debt, the relation of principal and surety is established between the parties, the grantee becoming the principal and the mortgagor the surety; and the satisfaction of the mortgage by the mortgagee, with knowledge of such conveyance, releases the mortgagor from the mortgage debt."

In Meigs v. Tunnicliffe, 214 Pa. 495, 63 A. 1019, 112 Am. St. Rep. 769, 6 Ann Cas. 549, it was held that, under such circumstances, the mortgagee could not recover any part of the mortgage debt from the mortgagor. Other courts take a narrower view and hold that the mortgagor is entitled only to credit for the full value of the property released. Worcester Sav. Bank v. Thayer, 136 Mass. 459. In Hampe v. Manke, supra, this court quoted from 32 Cyc. 152, as follows:

"Generally a surety is discharged if the creditor deprives him

of any right he would have against the principal, even though he be benefited, whether such injury arises from some positive act, or omitting to do something which it was the duty of the creditor to perform."

To this effect is section 924, Jones on Mortgages (8th Ed.), as follows:

"The mortgagee may, by his dealings with the purchaser and mortgagor, recognize the former as the principal debtor, and the latter as surety toward himself, and thereby preclude himself from securing a personal judgment against the mortgagor. Any material alteration of the mortgage contract will discharge the mortgagor. * * * It is the settled rule that the court will not inquire whether the alteration be beneficial or injurious to the surety, if it be a material one."

See, also, Wiltsie, Mortgage Foreclosure (4th Ed.) § 244, p. 338, citing Paine v. Jones, 76 N. Y. 274, affirming 14 Hun (N. Y.) 577 and relying on Calvo v. Davies, 73 N. Y. 211, 29 Am. Rep. 130.

Section 1504, R. C. 1919, provides:

"A surety is exonerated: 1. In like manner with the guarantor."

Section 1491 provides:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal in respect thereto, in any way impaired or suspended."

Section 1491 and subdivision 1, § 1504, above quoted, were cited in support of the holding in Iowa Loan & Trust Co. v. Schnose, 19 S. D. 248, 259, 103 N. W. 22, 9 Ann. Cas. 255, supra, that the liability of such a surety was extinguished. In that case, an extension of time extinguished the surety's liability. In Braun v. Crew, 183 Cal. 728, 192 P. 531, identical sections of the California Code were quoted in support of the holding that the surety was released irrespective of the value of the land mortgaged, the court saying that:

"The main principle on which the release of the surety is grounded, * * * is that the surety is entitled to stand on the strict letter of the contract upon which he is liable."

And further:

"The rule in this state is that where there is an extension of time by the creditor to the principal, without the consent of the surety, the question of the extent of the injury which the surety sustains therefrom cannot be inquired into."

If the extent of the injury to such a surety is not to be inquired into where the reason for the release is found in an extension of time by the mortgagee to the grantee of the mortgagor, why should a different rule be applied in determining the question of the surety's exoneration when the mortgagee and the mortgagor's grantee have by agreement released the mortgage entirely? Is it enough to say that, on the day the mortgage was satisfied, the note was credited with what was then the full market value of the land? Had the mortgagee required the mortgagor to pay the debt, the mortgagor would have been subrogated to the mortgagee's security; but now this security is lost. It is true that its then full market value has been credited on the debt; but its market value was at least $1,400 less than the mortgagor, and presumably the mortgagor's grantee, once placed upon it. Who can say that the mortgagors might not have bid it in for the full amount of the debt, with absolute assurance that their grantee would redeem before the period of redemption had expired? Nor is this the only way in which the mortgagor might have been protected against loss had the holder of the mortgage pursued his legal remedies against the mortgagors and their grantee.

We are therefore of the opinion that, by our statutes, by our prior decisions, by the authorities upon which those decisions were based, as well as by reason, this court should hold that the mortgagors were released, not pro tanto, but entirely, by the satisfaction of the mortgage upon which they were sureties, and that the complaint does not state a cause of action against them. It is unnecessary to determine whether the demurrer might be sustained on other grounds.

The order appealed from is affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.