429 N.W.2d 73 (1988)
SUNBANK OF SOUTH DAKOTA, Plaintiff and Appellee,
v.
PRECISION SPECIALTY PRODUCTS, INC., Precision Specialty Products, Division of Weinberg Investments, Inc., Merle Debuhr, Shirley Debuhr, Lewis F. Weinberg, Bonnie J. Weinberg, and Weinberg Investments, Inc., Defendants, and
John Murphy, Alice Murphy, Clifford Cracauer, Harriet Cracauer, Defendants and Appellants.
No. 16049.
Supreme Court of South Dakota.
Considered on Briefs May 27, 1988.
Decided September 14, 1988.
*74 John J. Ulrich, Asst. U.S. Atty., Sioux Falls, for plaintiff and appellee SunBank.
Lee M. McCahren, Vermillion, for defendants and appellants Murphys.
Wayne Groe, Elk Point, for defendants and appellants Cracauers.
PER CURIAM.

ACTION
John and Alice Murphy (Murphys) and Clifford and Harriet Cracauer (Cracauers) appeal a judgment binding them to their personal guarantees given to SunBank, and from the denial of their motions for judgment notwithstanding the verdict and/or for a new trial. We affirm.

FACTS
In 1977 and 1978 SunBank made loans of $150,000 and $50,000 to Precision Specialty Products, Inc. (Precision), a South Dakota corporation. Murphys personally guaranteed both notes while Cracauers personally guaranteed only the $50,000 note. The language of the "Continuing Guaranty" forms signed by both Murphys and Cracauers provided in pertinent part:
(1) For valuable consideration, the undersigned (hereinafter called Guarantors) jointly and severally unconditionally guarantee and promise to pay to Sun-Bank of South Dakota (hereinafter called Bank), or [sic.] order, on demand, in lawful money of the United States, any and all indebtedness of Precision Specialty Products, Inc. (hereinafter called Borrowers) to Bank. The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers or any one or more of them, heretofore, now, or hereafter made, incurred or created ... however arising....
(2) The liability of Guarantors shall not exceed at any one time the sum of ... ($150,000).... Notwithstanding the foregoing, Bank may permit the indebtedness of Borrowers to exceed Guarantor's liability. This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied....
. . . . .
(4) Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon; (b) take and hold security for the payment of this guaranty or the indebtedness guaranteed, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank in its discretion may determine; and (d) release or substitute any one or more of the endorsers or *75 guarantors. Bank may without notice assign this guarantee in whole or in part.
(5) ... Until all indebtedness of Borrowers to Bank shall have been paid in full, even though such indebtedness is in excess of Guarantors' liability hereunder, Guarantors ... waive any benefit of, and any right to participate in any security now or hereafter held by Bank. Guarantors waive all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this guaranty and of the existence, creation, or incurring of new or additional indebtedness....
In 1979 Precision was transferred to Lewis Weinberg, who obtained an additional loan of $242,000 from SunBank. In 1980 Precision ceased operations due to financial difficulties. Weinberg continued to make payments on Precision's notes to SunBank through November 1983, but SunBank extended at least one of the payments to the end of the contract period and received payments on the interest alone for about a year. In 1985 SunBank filed suit to enforce Murphys' and Cracauers' personal guarantees. Following trial, a jury found that Murphys and Cracauers should not be exonerated from their obligations under the guaranty agreements. The trial court denied Murphys' and Cracauers' motions for judgment notwithstanding the verdict and/or for a new trial.

ISSUE
Whether the trial court erred in denying the motions for judgment notwithstanding the verdict and/or for a new trial?

DECISION
Murphys and Cracauers argue that certain actions of SunBank subsequent to execution of their guarantees so modified Precision's obligations as to exonerate them from their guarantees. Specifically, Murphys and Cracauers point to SunBank's actions in extending Precision's time for repayment of its notes, loaning Precision another $242,000, modifying Precision's obligations to reflect these transactions, reducing collateral by liquidating Precision's assets and failing to notify them of any of these acts. Murphys and Cracauers contend that the applicable statutes required the trial court to grant their motion for a judgment notwithstanding the verdict on this basis. In the alternative, they contend that the trial court's refusal to give jury instructions in this regard prejudiced them and entitles them to a new trial. As support for their contentions, Murphys and Cracauers rely on SDCL 56-1-22:
A guarantor is exonerated except so far as he may be indemnified by the principal if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect or the remedies or rights of the creditor against the principal in respect thereto in any way impaired or suspended.
Notwithstanding the above statute, we have previously set forth the rule that once the validity of a guaranty is recognized, the terms of the instrument itself determine whether alterations to the obligations of the principal are sufficient to exonerate the duty of the guarantor. First National Bank of Beresford v. Nelson, 323 N.W.2d 879 (S.D.1982); See also United States v. Porter, 581 F.2d 698 (8th Cir.1978). In this instance, we find that the breadth of the language of the guaranty agreements signed by Murphys and Cracauers rebuts their claims of exoneration due to alteration of Precision's obligations. The language in the guarantees specifically allowed SunBank to extend the time for Precision's payments on its notes. The guarantees obligated Murphys and Cracauers to pay any indebtedness of Precision (up to the specified dollar amount) including indebtedness incurred or created after execution of the guarantees or arising under successive transactions. The guarantees also permitted SunBank to modify the terms of Precision's notes. Further, the guarantees authorized SunBank to take security for the payment of Precision's notes, to direct the order or manner of sale of such security and waived Murphys' and Cracauers' interests in such security. Finally, *76 the guarantees waived Murphys' and Cracauers' rights to notice of any such acts. In short, all of the challenged actions taken by SunBank with reference to Precision's notes were authorized by Murphys and Cracauers in the guaranty agreements they signed.
Neither Murphys nor Cracauers raise any question in regard to the validity of their guaranty agreements other than public policy. They contend that the rights and protections afforded by SDCL 56-1-22 would be without meaning and effect if they could be waived by language in a guaranty. However, as the Tenth Circuit Court of Appeals has previously observed:
Their reliance on `equities' and general principles of law are unpersuasive because their rights and liabilities are fixed by the contracts of guaranty. The risk of the guarantors was not increased because their obligations were absolute and unconditional.
United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673, 677 (10th Cir.1964).
Similarly, Murphys' and Cracauers' obligations in this instance were absolute and unconditional. Their rights and liabilities were fixed by their contracts of guaranty and were not increased by the subsequent actions of SunBank.
Judgment is affirmed.
SABERS, J., deeming himself disqualified, did not participate.