1997 SD 58

**Thomas E. LANE, Plaintiff and Appellee,**

v.

**The TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation, Defendant and Appellant**

**and**

**First American Holding Company, Inc., a South Dakota Corporation, and E.J. Smith, individually, Defendants.**

**No. 19753.**

Supreme Court of South Dakota.

Argued Feb. 19, 1997.

Decided May 21, 1997.

Rehearing Denied June 26, 1997.

Curtis S. Jensen, DeMersseman Jensen, Rapid City, for plaintiff and appellee.

Roger W. Damgaard, James E. Moore of Woods, Fuller, Schultz & Smith, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Travelers Indemnity Company appeals from the judgment denying its motion for summary judgment and granting Thomas E. Lane's [hereinafter Lane] cross-motion for summary judgment. We reverse.

**FACTS AND PROCEDURE**

[¶ 2.] In October 1988, Lane entered into a stock purchase agreement with E.J. Smith [hereinafter Smith] and First American Holding Company [hereinafter Holding Company] whereby Lane sold all of his shares of common stock in First American Systems. Smith was the president of the Holding Company. He purchased Lane's stock through the Holding Company but also personally guaranteed the obligation. Lane was the majority stockholder in First American Systems, d/b/a Kluthe and Lane Insurance Agency in Rapid City. Lane's and Smith's agreed purchase price for the shares of stock was $507,960. Lane's and Smith's agreement provided for an initial payment of $50,000 plus nine percent interest on January 1, 1989, with annual payments of $56,815 due on November 1. These annual payments were to commence November 1, 1989 and continue until November 1, 2003, when the remaining balance would be due.

[¶ 3.] Lane entered into a separate agreement with Travelers whereby Travelers guaranteed the payment of the unpaid principal in the amount of $250,000. This guaranty was specifically negotiated by Lane and Travelers and included a Paragraph 3, which provided:

Seller agrees that any change in the terms of the Promissory Note, including but not limited to a change relative to the repayment thereof or *extension of time of payment*, shall automatically release and discharge the Guarantor from any obligation under the guarantee set forth in paragraph (1) hereof, *unless the Guarantor shall have agreed in writing to such extension or modification.* (Emphasis added.)

This paragraph was specifically negotiated, the final clause of said paragraph having been suggested by Lane's attorney, who wrote the following to Lane:

Finally with respect to paragraph 3, I would suggest that at the end of the paragraph there be added the phrase "unless the guarantor shall have agreed in writing to such extension or modification." *This would protect Travelers against any unilateral action on your part to change the terms of the obligation which Travelers has guaranteed;* however, it would permit all of you (seller, purchaser and Travelers) to work out an extension or modification of terms, if all parties agreed such would be in their mutual interest. (Emphasis added.)

[¶ 4.] Smith made the initial payment on January 5, 1989. On November 3, 1989, he made the payment due November 1. The following year, Smith contacted Lane on October 29 to advise him he could not make the entire payment due on November 1, 1990. On the November 1 due date, Lane received a payment of $20,000 from Smith along with a letter indicating he appreciated Lane's "help" and promising to send the balance, by check dated January 1, by the end of December. Upon receipt of this payment and Smith's letter, Lane calculated interest at ten percent for two months and planned his taxes according to Smith's promise to pay effective January 1.

[¶ 5.] On January 2, 1991, Lane received a check from Smith in the amount of $36,815, dated December 26, 1990, with a notation indicating it was payment for November 1991, not November 1990. Lane returned the check to Smith so he could correct the date and informed Smith he expected interest. Lane received a corrected check from Smith on February 4, 1991, but with no interest. Lane made a second written request for the interest on February 25, 1991. No interest has ever been paid for the delayed payment.

[¶ 6.] Lane received a check for the November 1991 payment on November 4, 1991, after receiving a call from the Kluthe & Lane Insurance Agency to come to the office to pick up the check.

[¶ 7.] Smith failed to make timely payment in November 1992. An employee of Smith's telephoned Lane on November 2, 1992, to inform Lane that Smith's payment would be late by one week. Lane confirmed this telephone conversation with Smith by letter indicating: "When [your employee] called on November 2nd to say it would be a week late I said OK but when I called each week and was told it would be another week I mentioned to [your employee] a couple times that I would expect interest and assumed he passed that on to you." Lane calculated interest for thirty-two days. On December 4, 1992, Lane received the November 1992 payment, but without interest.

[¶ 8.] In 1993, Smith telephoned Lane shortly before November 1 to advise Lane he would be unable to pay on November 1. By letter dated November 18, 1993, Lane confirmed his earlier telephone conversation with Smith: "Confirming our phone call Monday, I'm willing to accept late payments as long as you pay reasonable interest *and* don't stretch it out too long. Last year you paid in early December (without interest) and I would not like to go any longer than that." (Emphasis original.) However, by early December, Lane had still not received Smith's payment and so he wrote to Smith again on December 20, 1993, setting the interest rate at two points over prime. Lane received the November 1993 payment on February 7, 1994, along with a note from

Smith indicating he would pay the interest due within the next ten days. Lane has still not received this interest.

[¶ 9.] In spite of these late payments, Lane did not declare Smith in default and invoke Paragraph 2 of the guaranty with Travelers. Paragraph 2 provided that if Lane declared a default, he could not collect from Travelers until he had made a "commercially reasonable effort" to obtain payment from Smith. Under the terms of the guaranty agreement, a "commercially reasonable effort" would be made if Lane gave Smith written notice of default and demanded a resumption of payments within sixty days. There is no dispute that Travelers was unaware of Smith's late payments, or of any communication between Lane and Smith regarding the delay in these payments.

[¶ 10.] On May 12, 1994, First American Systems filed Chapter 7 bankruptcy. On November 4, 1994, Lane's attorney sent notice to Smith, with copies to Travelers' legal counsel, that the Holding Company and Smith were in default under the terms of the stock purchase agreement and demanding payment be resumed within sixty days of said notice. On January 13, 1995, Smith filed Chapter 7 bankruptcy. Ten days later, on January 23, 1995, Lane filed suit to enforce Travelers' guaranty.

[¶ 11.] Both parties filed motions for summary judgment. The circuit court granted Lane's motion and entered judgment against Travelers for the principal amount of $250,000 plus prejudgment interest and costs for a total judgment of $305,573.71. By the same judgment, the circuit court entered default judgment against the Holding Company, which is not a party to this appeal, in the amount of $443,675.83. Travelers appeals, raising a single issue:

Whether the terms of the agreement between Lane and Smith were changed such that they would constitute a release of Travelers Indemnity Company as guarantor?

## STANDARD OF REVIEW

[¶ 12.] Our normal standard of review on a motion for summary judgment is well settled.

On review of a grant or denial of summary judgment,

"we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper."

*Petersen v. Dacy*, 1996 SD 72, ¶ 5, 550 N.W.2d 91, 93 (quoting *Trippet Special Trust v. Blevins*, 1996 SD 29, ¶ 6, 545 N.W.2d 216, 221). However, in this case both parties agree there is no question of fact but rather differ upon which of them is entitled to summary judgment as a matter of law. "The existence of a valid express contract is a question of law to be determined by the court, not a jury[.]" *Owens v. Moyes*, 530 N.W.2d 663, 665 (S.D.1995). As such we review the issue de novo. *De Smet Ins. Co. v. Gibson*, 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99.

## ANALYSIS AND DECISION

[¶ 13.] **Whether the terms of the agreement between Lane and Smith were changed such that they would constitute a release of Travelers Indemnity Company as guarantor?**

[¶ 14.] Travelers asks this Court to look particularly at the payments due in 1990, 1992, and 1993 in answering the above question. We first examine the terms of the guaranty agreement which Lane and Travelers negotiated and signed November 1, 1988. It provides, in pertinent part, as follows:

2. Seller [Lane] represents and warrants to Guarantor [Travelers] that he will use a commercially reasonable effort to obtain payment of the Promissory Note from Buyer prior to resorting to the guarantee

set forth in paragraph (1) hereof. "Commercially reasonable effort" by Seller to obtain payment of the Promissory Note shall be satisfied by Seller giving written notice to Buyer that Buyer is in default of the Promissory Note and/or Stock Purchase Agreement, by demanding in such notice that Buyer resume making payments in accordance with the Note and/or Agreement within sixty (60) days of the date of the notice and by forwarding a copy of said notice to Travelers within five (5) days of its issuance.

3. Seller agrees that any change in the terms of the Promissory Note, including but not limited to a change relative to the repayment thereof or extension of time of payment, shall automatically release and discharge the Guarantor from any obligation under the guarantee set forth in paragraph (1) hereof, unless the Guarantor shall have agreed in writing to such extension or modification.

4. This Agreement shall be binding upon and inure to the benefit of the parties, their respective legal representatives, heirs, successors and assigns.

[¶ 15.] As previously noted, it is undisputed that the guaranty agreement in the present case was not a boilerplate instrument but was negotiated between Lane and Travelers. It is also undisputed that the clause at the end of Paragraph 3 of the parties' agreement, that is, "unless the Guarantor shall have agreed in writing to such extension or modification," was specifically suggested by Lane's attorney during the drafting of this agreement. In making this suggestion, which was ultimately adopted by the parties, Lane's attorney advised,

[t]his would protect Travelers against any unilateral action on your part to change the terms of the obligation which Travelers has guaranteed; however, it would permit all of you (seller, purchaser and Travelers) to work out an extension or modification of the terms, if all parties agreed such would be in their mutual interest.

[¶ 16.] Travelers claims that on three occasions, in 1990, 1992, and 1993, Lane extended the time under the stock purchase agreement for Smith to make payment, without Travelers' consent, thereby releasing Travelers from its obligation and risk as guarantor under the above guaranty agreement. Travelers claims that on all three occasions, the alleged extension agreements extending the time for payment were an enforceable agreement supported by consideration, that being Lane's forbearance from sending notice of default or starting collection proceedings. It is undisputed that at all times relevant to this appeal, Travelers was unaware of the delay in payments and of the communication between Lane and Smith regarding same.

[¶ 17.] Lane claims no extension of the due date was ever requested, and no extension was ever granted. He acknowledges there were years in which payments were partially made and made late, however, he claims this did not constitute an agreement to change the terms of the stock purchase agreement which set the annual due date for payment at November 1.

[¶ 18.] It is settled law in this state that an extension of the time of payment of the principal obligation by the creditor, if given as the result of a binding agreement between the creditor and the debtor and not consented to by the guarantor, releases the guarantor from his liability under the guaranty agreement. SDCL 56–1–22 states:

A guarantor is exonerated except so far as he may be indemnified by the principal if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect or the remedies or rights of the creditor against the principal in respect thereto in any way impaired or suspended.

See Sunbank of S.D. v. Precision Specialty Products, Inc., 429 N.W.2d 73 (S.D.1988); Zastrow v. Knight, 56 S.D. 554, 229 N.W. 925 (1930); Smith v. Blackford, 56 S.D. 360, 228 N.W. 466 (1929); Farmers' & Merchants' State Bank of Tripp v. Tasche, 53 S.D. 603, 222 N.W. 139 (1928); Iowa Loan & Trust Co. v. Schnose, 19 S.D. 248, 103 N.W. 22 (1905); Bunker v. Taylor, 10 S.D. 526, 74 N.W. 450 (1898). See also 38 AmJur2d Guaranty § 92 (1968).

[¶ 19.] However, SDCL 56–1–26 provides that "[m]ere delay on the part of a creditor to proceed against the principal or to enforce any other remedy does not exonerate a guarantor." *Hanna v. Stroud*, 13 S.D. 352, 83 N.W. 365 (1900); *Bailey Loan Co. v. Seward*, 9 S.D. 326, 69 N.W. 58 (1896). Thus, resolution of the question to be answered in this case is whether the acceptance of late payments by Lane constitutes an enforceable agreement for an extension of time for payment such that it would release Travelers from its liability pursuant to SDCL 56–1–22, or whether it was merely a delay or indulgence which would result in no discharge under SDCL 56–1–26. The difference is the question of enforceability of the delay by the debtor.

[¶ 20.] Beyond the protection afforded a guarantor by SDCL 56–1–22, its obligations under the guaranty are no greater than those created by that document. In 1988, this Court held in *Sunbank*, that

[n]otwithstanding [SDCL 56–1–22], ... once the validity of a guaranty is recognized, the terms of the instrument itself determine whether alterations to the obligations of the principal are sufficient to exonerate the duty of the guarantor.

429 N.W.2d at 75 (citing *First Nat'l Bank of Beresford v. Nelson*, 323 N.W.2d 879 (S.D. 1982); *United States v. Porter*, 581 F.2d 698 (8th Cir.1978)). The guarantor's liabilities are " 'not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent.' " *FDIC v. Moore*, 118 N.M. 77, 879 P.2d 78, 81 (1994) (quoting *Shirley v. Venaglia*, 86 N.M. 721, 527 P.2d 316, 319 (1974)). Here there can be no claim that Travelers impliedly or otherwise ever consented to the extensions, as it never knew of them. Therefore any authori-

ty for the actions of Lane must be found within the four corners of the guaranty.[1]

[¶ 21.] Moreover, it is not necessary that the promiser follow through on the promise to pay whether timely or late; the promise to pay in lieu of a declaration of default, standing alone, constitutes good consideration. *See* SDCL 53–6–1:

Any benefit ... agreed to be conferred upon the promiser by any other person to which the promiser is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promiser, is a good consideration for a promise.

(Emphasis added); *see also Parsons v. State Lottery*, 504 N.W.2d 593, 598 (S.D.1993) (Sabers, J., concurring in result) (" 'It is elementary that a promise to pay constitutes consideration.' ") (quoting *State v. Murphy*, 74 S.D. 21, 23, 48 N.W.2d 225, 226 (1951)); *accord Heinert v. Home Fed. Sav. & Loan Ass'n*, 444 N.W.2d 718, 721 (S.D.1989) ("Generally, where mutual promises are made, each furnishes a sufficient consideration to support an action of the other.").

[¶ 22.] In this case, Lane stated he would allow Smith to make late payments on the express condition Smith add interest to the payments. Smith agreed, as evidenced by the parties' correspondence:

1. January 2, 1991 letter from Lane to Smith: "I understood you to say you would include interest for the delay...."

2. February 25, 1991 letter from Lane to Smith: "In my Jan 2, '91 memo re the '90 note payment I noted you had said you would pay interest for the delay—I haven't recieved [sic] that Jim! $36,815 @ 10% = $306.75 per

---

1. As such, the terms of the contract control and the determination of whether there is a violation of the guarantee does not hinge on a showing of actual prejudice to the guarantor's interests. *Sunbank*, 429 N.W.2d at 76 (citing *United States v. Newton Livestock*, 336 F.2d 673, 677 (10thCir.1964). *See also Farmers' & Merchants' State Bank*, 53 S.D. 603, 222 N.W. 139. The rationale for this was set forth by this Court in *Zastrow*:

The fundamental reasons for granting an absolute discharge to the surety where the creditor without the consent of the surety extends time to the principal are twofold: First, that the risk of the surety is thereby increased; and, second, that the creditor has thereby limited the surety's right to pay at any time and proceed against the principal by way of subrogation. 56 SD at 564, 229 N.W. at 929–30.

month. Recieved [sic] note payment Feb 4[.] 3 months (Nov, Dec, Jan) × $306.75 = $920.25."

3. December 5, 1992 letter from Lane to Smith: "Dallas called and I picked my check up yesterday. Thanks but I expected interest for the late payment. When John called on November 2nd to say it would be a week late I said OK but when I called each week and was told it would be another week I mentioned to John a couple times that I would expect interest and assumed he passed that on to you. As I figure it $56,815 at 9% is $14.53 per day times the 32 days late equals $464.96."

4. November 18, 1993 letter from Lane to Smith: "... Confirming our phone call Monday, I'm willing to accept late payments as long as you pay reasonable interest *and* don't stretch it out too long. Last year you paid in December (without interest) and I would not like to go any longer than that." (Emphasis Lane's.)

5. December 20, 1993 letter from Lane to Smith: "... As to interest—the Minneapolis Norwest prime is 6% today and *as discussed earlier,* 2 points over prime would be fair." (Emphasis added.)

6. On envelope postmarked January 26, 1994 containing payment dated December 30, 1993, Smith wrote to Lane: "Tom—thanks for being patient. *Will send interest within next 10 day[s].* Soon as I get back. Thanks Jim." (Emphasis added.) [2]

Lane, on the other hand, impliedly agreed not to declare Smith in default and clearly did not accelerate the debt in accordance with the requirements of the guaranty agreement.

An agreement by a creditor to give time to his principal debtor, in a contract for the payment of money, need not be made in express language, in order to discharge a

surety. It is sufficient if a mutual understanding and intention to that effect are proved.

*Windhorst v. Bergendahl,* 21 S.D. 218, 222, 111 N.W. 544, 545 (1907). *See Rollinger v. J.C. Penney Co.,* 86 S.D. 154, 158, 192 N.W.2d 699, 701 (S.D.1971), *overruled on other grounds by Smith v. Tobin,* 311 N.W.2d 209 (S.D.1981) ("Forbearance signifies a contractual obligation of a lender or creditor to refrain, during any given period of time, from requiring the borrower or debtor to repay a loan or debt."); *Bayer v. Burke,* 338 N.W.2d 293, 294 (S.D.1983) ("[F]orbearance from exercising a right is legal consideration."); *Richter v. Industrial Fin. Co.,* 88 S.D. 466, 221 N.W.2d 31 (1974) (holding that forbearance from commencing bankruptcy proceedings was relinquishment of a legal right and constituted consideration); *Western Surety Co. v. Walter,* 43 S.D. 38, 177 N.W. 804 (1920) (finding that implied extension of time, coupled with actual forbearance from proceeding against decedent debtor's estate, constituted good consideration for giving of a note); *see also Alvey v. Union Inv., Inc.,* 697 S.W.2d 145, 148 (Ky.Ct. App.1985) ("[The agreement], in event of default, gave [the payee] the option to demand payment of the unpaid balance and obviously [the payee] could bring suit to enforce that right. Clearly, the forbearance of a right to sue is valid consideration to support a promise.").

[¶ 23.] The fact these parties had a binding agreement is borne out by Travelers' example at oral argument: If Lane had accelerated the debt immediately after receiving the January 26, 1994 correspondence from Smith, Smith surely could have used all of the correspondence as a defense:

An obligation is altered when the debtor is discharged from the original contract and a new contract is substituted in its place. The test is whether there is a new contract which will be enforced by the courts[.] Obviously, if the debtor can assert a new contract in defense to an action

---

**2.** Lane's deposition testimony is also consistent with this evidence. Lane testified that he felt Smith owed him at least $920.25 in unpaid interest for the late payments. Further, the stock purchase agreement provided for interest at nine percent on the unpaid balance. Yet the 1990 extension called for interest at ten percent. The 1992 extension was at nine percent. In 1993 the interest was to be eight percent not based upon the contract, but the existing prime rate.

on the original contract the surety may do so also and, since it did not guarantee performance of the new agreement, it cannot be held answerable for the principal debtor's default.

. . . .

[Only i]f the creditor retains the right to demand payment of the debt according to its original terms the surety is not discharged.

*Bier Pension Plan Trust v. Estate of Schneierson,* 74 N.Y.2d 312, 546 N.Y.S.2d 824, 826–27, 545 N.E.2d 1212, 1214–15 (1989) (citations omitted). Here, it is obvious that Smith would have been able to enforce the payment extension agreement if Lane had accelerated the debt. Therefore, Lane and Smith had a binding agreement, supported by valid consideration, which amounted to a "change relative to the repayment . . . or extension of time of payment," which released Travelers according to Paragraph 3 of the guaranty agreement. *See Commercial Sav. Bank v. Dunning,* 202 Iowa 478, 210 N.W. 599, 601 (1926):

> In order to apply the rule of the discharge of the guarantor or surety by an agreement for an extension of time of payment, there must be such an agreement as will bar the creditor from thereafter proceeding in the collection of his claim within the time. If the holder of the note has not bound himself, expressly nor impliedly, by an agreement, from suing on the demand at any time thereafter, the claimed extension of credit does not discharge the guarantor.

[¶ 24.] Accordingly, summary judgment to Lane should be reversed, and an order granting summary judgment to Travelers should be entered.

[¶ 25.] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

