804, 39 L. Ed. 943—but not on the point here involved); The City of Norwalk (D. C.) 55 Fed. 98 (affirmed on appeal, so far as the point in question is concerned, 61 Fed. 364, 9 C. C. A. 521); The St. Nicholas (D. C.) 49 Fed. 671; Felty v. Steamship Co. (D. C.) 29 Fed. 332 (affirmed on appeal Id., 32 Fed. 112); The H. E. Willard (C. C.) 52 Fed. 387; The Willamette, 70 Fed. 874, 18 C. C. A. 366, 31 L. R. A. 715.

Especially have the local statutes been given full force in admiralty in this jurisdiction. In The Oregon, supra, Judge Deady brings the revival statute and the statute giving a lien upon boats and vessels for damages or injuries to persons or property by such boats or vessels (see sections 381 and 5706–5708, B. & C. Comp.) in juxtaposition, and upholds a libel in rem in favor of the personal representatives based upon a tort resulting in death. The principle having been so clearly and uniformly applied and enforced in this jurisdiction, I am constrained, without reserve, to give it effect in this controversy. It does not seem to me that the fact that this is not a case of collision can alter the result. The deceased was injured by a fall upon the deck of the vessel. Hence the injury was sustained upon water, not upon land. The cause is therefore within maritime jurisdiction.

The exceptions should be overruled, and it is so ordered.

---

### In re ROSE.

(District Court, W. D. Pennsylvania. February, 1907.)

BANKRUPTCY—EXAMINATION OF BANKRUPT—CREDITORS ENTITLED TO EXAMINE.
    A creditor, named as such in a bankrupt's schedule, is entitled to examine the bankrupt under Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3430), upon any matter properly relevant to the proceedings, and it is not necessary that he should first prove his claim.

In Bankruptcy. On certificate from referee.

Cassidy & Richardson, for petitioners.
Chantler & McClung, for creditor.

EWING, District Judge. The question certified here is whether, without proving his claim, an alleged creditor is entitled to examine the bankrupt. It appears from the report of the referee that on the 5th of September, 1906, the bankrupt appeared and was duly sworn, and William A. Jordan, Esq., counsel for J. D. Bernd Company, the only creditor named in the bankrupt's schedule, started to examine the bankrupt, when objection was interposed on the ground that said party, the J. D. Bernd Company—

"has proven no claim in this case, as disclosed by the record, and does not now offer to prove any claim, but has expressly stated through his counsel that they do not propose to prove any claim, because in the opinion of the counsel the indebtedness of J. D. Bernd Company against this bankrupt is not dischargeable by the bankruptcy proceedings, and therefore the said J. D. Bernd Company has no standing at the present time in this proceeding by the referee."

The referee ruled that:

"It appearing that the examination of this bankrupt has been adjourned from August 17, 1906, until this date, for the purpose of enabling the J. D. Bernd Company to prove its claim in this case, and it further appearing that no claim has been filed on behalf of said company, and that said company is the only person named in the schedules filed by the bankrupt, the referee is of opinion that the said J. D. Bernd Company is not at the present time entitled to examine the bankrupt, and the objection is sustained."

While it is alleged in the objection that the counsel for the J. D. Bernd Company stated that they do not propose to prove any claim, because in his opinion the indebtedness is not dischargeable by the bankruptcy proceedings, yet that is not stated as a fact by the referee, nor is his ruling based on that, but solely on the ground of the failure first to prove the claim.

In Brandenburg on Bankruptcy, § 519, it is said that:

"Any person who shows that he is actually a creditor of the bankrupt, as by being so named in the schedule, or by any other satisfactory evidence, is entitled to an order for the examination of the bankrupt, although he has not formally proved his claim."

In Re Walker (D. C.) 3 Am. Bankr. Rep. 35, 96 Fed. 550, a similar question is considered, and it is there held that it is not necessary for any one who appears to be a creditor to prove his claim before he is entitled to an examination of the bankrupt; and it is said:

"Was there sufficient evidence before the referee to show that the creditor had a provable claim against the estate? I think there was. The claim was listed by the bankrupt as a debt which he was owing, and he was required by section 7 of the act (Bankr. Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]) to state under oath the amount of the claim, and the consideration out of which it arose. This, of course, would not establish the claim, nor the right of the creditor to share in dividends; but as to such matters as the examination of the bankrupt, and as against him, it certainly makes out at least a prima facie case that the claim exists and is provable against the estate."

The same case rules that a creditor who has not proved his claim is entitled to oppose the discharge of the bankrupt, and, if he is entitled to oppose a discharge without proving his claim, he ought likewise to be allowed to examine the bankrupt for the purpose of establishing the grounds of his objections.

So, also, in Re Jehu (D. C.) 2 Am. Bankr. Rep. 498, 94 Fed. 638, Judge Shiras states:

"I know of no provision of the bankrupt act which requires that a creditor must file and prove up his claim before he is entitled to an order for the examination of the bankrupt."

From these authorities it would appear that it is wholly unnecessary to require one who appears to be a creditor of the bankrupt to prove his claim before being entitled to examine the bankrupt, and I therefore conclude that the referee was in error in refusing to permit the examination in this case, and it is directed that such examination, if the creditor so desires, be now allowed. Of course, the referee will see that the examination is conducted along proper lines and for legitimate purposes with reference to the bankruptcy proceeding, either

to show the condition of the estate of the bankrupt, its whereabouts, amount, etc., or to elicit such matters as might be available in opposition to his discharge, or some other relevant testimony.

CAMORS–McCONNELL CO. v. McCONNELL.

(Circuit Court, S. D. Alabama. July 15, 1908.)

No. 238.

INJUNCTION—EVIDENCE—WEIGHT AND SUFFICIENCY.

    Evidence *held* to establish the allegations of the answer, in a suit to enjoin defendant from engaging in business in competition with complainant in violation of a contract, that the contract set up in the bill was only a part of the actual contract between the parties, and that, as supplemented by other writings and agreements constituting the entire contract, it was in restraint of trade and commerce, and in violation of public policy, and would not sustain a suit in a court of justice.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Injunction, § 278.]

In Equity.

See 152 Fed. 321, 81 C. C. A. 429.

Howe, Fenner, Spencer & Cocke and Inge & Armbrecht, for complainants.

Gregory L. & H. T. Smith, for defendant.

TOULMIN, District Judge. When this case was heretofore on appeal in the Circuit Court of Appeals, that court in its opinion said:

    "If the contract be as averred in the answer, and the complainant does not prove the whole of it, the defendant could prove it, as well the part lying in parol as that which was reduced to writing, so that the court might, upon an inspection of the whole contract, determine therefrom its character. The unity of the contract is not severed, or its meaning or effect in any degree altered, by putting part of it in writing and leaving the rest in parol. It would seem therefore that, in such case, to grant the complainant the relief which it here seeks would be, in substance, to enforce an illegal contract and one which is illegal because it is against public policy to permit it to stand."

    The answer shows how the formation of said corporation of Camors-McConnell Company and the sale of the business and property of Camors, McConnell & Co. to it arose and was brought about. The answer avers: That the United Fruit Company, or persons representing it, entered into negotiations with the copartners composing Camors, McConnell & Co., with a view to forming a combination with it upon such terms as would limit the amount of fruit imported by said firm and prevent competition by it with the United Fruit Company and its combined associates (named in the answer) both in the purchase and sale of fruit; that, after negotiating and agreeing with the representatives of the United Fruit Company as to the method by which such combination should be formed, a certain contract was entered into; and that said United Fruit Company undertook to have said contract reduced to writing. It avers: That Exhibit A to the bill of complaint was one of the forms of the contract so prepared and