SMITH, Superintendent of Banks, Respondent, v. BLACKFORD, et al, Appellants.

(228 N. W. 466.)

(File Nos. 6731, 6732, 6733. Opinion filed December 31, 1929.)

*J. M. Armstrong,* of Belle Fourche, and *W. G. Rice,* of Dead-wood, for appellant Smiley Gay Hardware Co.

*L. M. Simons,* of Belle Fourche, for Appellants Blackford.

*Robert C. Hayes,* of Deadwood, and *T. B. Thorson,* of Pierre, for Respondent.

BROWN, J. From a judgment and orders denying a new trial in an action for foreclosure of a real estate mortgage, defendants Smiley Gay Hardware Company and the Blackfords separately appeal. The appeals are submitted upon one brief.

The mortgage was given to Ed. Sundquist by Ammon M. Blackford and Maud C. Blackford to secure the payment of three notes executed by the Blackfords to Sundquist on November 1, 1919, each bearing interest at 6 per cent per annum from date as follows: Exhibit 1 for $5,160.13, due July 15, 1921; Exhibit 2 for $15,000, due July 15, 1920; and Exhibit 3 for $5,000, due July 15, 1921. On January 2, 1920, Sundquist transferred Exhibit 1 to Black Hills Trust & Savings Bank (hereafter referred to as the Deadwood bank). September 2, 1921, he transferred to said bank Exhibit 2, and on April 28, 1923, he transferred to said bank Exhibit 3, the transfer of the latter note being as security only, for a general indebtedness owed by Sundquist to the bank. At the time of the transfer of Exhibit 3 it was pledged to the Belle Fourche Savings Bank to secure the sum of $1,250, and the Deadwood bank paid that sum to the Belle Fourche Bank to procure the release of the note and its transfer to the Deadwood bank. The Blackfords, desiring to sell the mortgaged premises, found a prospective purchaser in one Warren T. McCray. But as a condition of his making a deal he required that the time of payment of the two notes Exhibits 1 and 2 be extended to July 15, 1923, and an agreement for such extension was entered into by McCray and the Deadwood bank, by the terms of which McCray agreed to pay these two notes (less all credits thereon), and $5,000 had been paid on the principal of the $15,000 note. McCray, as part of the same transaction, indorsed the $5,000 note, Exhibit 3, which was also extended to July 15, 1923. By the terms of the deed of the premises from the Blackfords to McCray, the latter, as part of the consideration, assumed and agreed to pay the mortgage indebtedness. Ammon Blackford testified that at the time of the making of the agreement between McCray and the Deadwood bank he understood that the Blackfords were to be released from liability on the notes, and that the bank was taking McCray in substitution for the Blackfords. There was other evidence to the effect that Blackford was insistent that he be released from liability on the notes when transferring the premises to McCray, but the cashier of the bank

testified unequivocally that there was no such understanding on his part, and that he at no time said anything to the effect that the bank was either releasing, or intending to release, the Blackfords from liability on the notes. He says the only matter discussed was the extension of time on the notes, that Blackford was very desirous of having the extension granted in order that sale might go through, and that the extension was granted with the full knowledge and consent and at the desire of Ammon Blackford. The court found the facts to be in accordance with the cashier's testimony on this branch of the case, and we cannot say that the preponderance of the evidence is against this finding.

Appellants argue that the notes in suit were paid by Ed. Sundquist giving his note to the bank for $13,000 with new security on April 28, 1923, and his son Oscar Sundquist giving to the bank on the same date his note with security for $12,500, and that the bank agreed to return to Sundquist the notes in suit as soon as four months had elapsed from the time of the new transaction; the bank desiring to hold the old paper for four months with the right to retain it should the new security be invalidated by the possible initiation of bankruptcy proceedings against Sundquist. But it is clear from the statement rendered by the bank to Sundquist at the time of this new transaction that the indebtedness taken up by these two notes of $13,000 and $12,500 did not include any of the Blackford notes. That statement itemizes the several obligations that are taken up by these two notes, and none of the Blackford paper is included in the statement.

On September 7, 1923, the Deadwood bank commenced action against McCray on the guaranty contract, and attached certain live stock owned by McCray, and in December, 1923, on executions issued on a default judgment obtained in this action, the bank sold the attached property for the aggregate sum of $18,265.70, and satisfied its judgment against McCray. On October 6, 1923, a petition in involuntary bankruptcy was filed against McCray in the state of Indiana, and he was adjudged a bankrupt on said petition on May 9, 1924, and in an action in the United States District Court in South Dakota by the trustee in bankruptcy against the plaintiff in the instant case, judgment was given in favor of the trustee for the recovery of the said sum of $18,265.70, less $6,-265.70 incurred for the care, preservation, and sale of the live

stock and other expenses, leaving a net judgment in favor of the trustee in the sum of of $12,000, which judgment has been paid and satisfied.

██ Appellants contend that the satisfaction by the Deadwood bank of · its judgment against McCray as guarantor of the notes, Exhibits 1 and 2, constituted the payment of those notes, and that such payment cannot be revoked or set aside because of the judgment and executions in that action having been vacated at the suit of the trustee in bankruptcy and the payment to the trustee pursuant to the federal court judgment of the net proceeds realized on the executions.

The satisfaction of a judgment has only the force of a receipt and like a receipt may be avoided as between the parties by showing that in fact no payment was received. Knaak v. Brown, 115 Neb. 260, 212 N. W. 431, 51 A. L. R. 237. When the attachment and sale of the McCray livestock was set aside by the judgment of the Federal Court and the Deadwood bank required to account for the proceeds to the trustee in bankruptcy and such proceeds were paid over to the trustee in pursuance of the Federal Court judgment, there was no error by the trial court in the instant case in holding that the satisfaction of the judgment of the Deadwood bank against McCray was without consideration and that such satisfaction should be vacated.

██ While the two Blackford notes, Exhibits 1 and 2, were owned and in the possession of the Deadwood bank and the note Exhibit 3 was in its possession as collateral security for the obligations of Sundquist, the mortgage securing these notes had not been formally assigned to the Deadwood bank. But the transfer of the notes carried with it, as an incident, the mortgage security. Rev. Code 1919, § 1551. Grether v. Smith, 17 S. D. 279, 96 N. W. 93. While the Deadwood bank was thus the holder of the Blackford notes and mortgage given to secure the same, Sundquist, who appeared of record to be the mortgagee, commenced foreclosure of the mortgage by advertisement under a power of sale contained therein and bid in the mortgaged premises at the foreclosure sale. He afterwards assigned his certificate of sale to the Belle Fourche Bank as security for an indebtedness of $1,600 which he owed that bank. Smiley Gay Hardware Company, having a judgment against Sundquist for $1,775, issued execution thereon, and undertook to

levy upon the certificate of sale in the hands of Belle Fourche Bank, and paid that bank $1,664, being the amount of its claim against Sundquist, with interest, in order to procure the certificate under its levy, and then sold that certificate at execution sale for $3,575.72. Sundquist's foreclosure of the Blackford mortgage was without the consent of the Deadwood bank, and as he neither had possession nor right of possession to the notes secured by that mortgage, and in fact had no title to either of the notes, Exhibit 1 or Exhibit 2, and it does not appear that the amount due on Exhibit 3 was greater than the indebtedness that it was pledged to secure, Sundquist had no authority to foreclose the Blackford mortgage, and the certificate of sale which he procured in the foreclosure was void, and the trial court did not err in so holding. But the court held that Smiley Gay Hardware Company is entitled in this action to recover out of the proceeds of the sale of the mortgaged premises that $1,664 which it paid to Belle Fourche bank in order to procure the release of the certificate that it might levy its execution against Sundquist thereon, and from this part of the judgment plaintiff has taken a cross-appeal. As already stated, Sundquist had no right or authority to foreclose the Blackford mortgage, and the certificate of sale issued to him on such foreclosure was void. His assignment of that void certificate to the Belle Fourche Bank conferred no rights upon that bank. Likewise the sale by the Smiley Gay Hardware Company of the void certificate under its execution against Sundquist conveyed no right or interest in the mortgage or notes to that company. The payment of the $1,664 by that company to the Belle Fourche Bank was a voluntary payment, and the company has no right to recover the amount in this action.

■ But, while there is evidence to sustain the finding of the court that Ammon Blackford consented to the extension of time granted to McCray, there is no evidence that the defendant Maud C. Blackford gave any such consent, and, upon the assumption of the mortgage debt of the Blackfords by McCray he became the principal debtor and the Blackfords only sureties. 41 C. J. 737, § 789; Iowa L. & T. Co. v. Schnose, 19 S. D. 248, 103 N. W. 22, 9 Ann. Cas. 255; Hampe v. Manke, 28 S. D. 501, 134 N. W. 60; Mundt v. Publishing Co., 42 S. D. 608, 176 N. W. 740; John Deere Plow Co. v. Tuinstra, 47 S. D. 555, 200 N. W. 61; Leach v. Nelson,

48 N. D. 1046, 189 N. W. 251. This being the case, what is the effect of the extension of time upon the liability of Maud C. Blackford? In the Schnose Case we expressly held that an extension granted by the mortgagee to a grantee who had assumed the payment of the mortgage debt released the mortgagor from liability. In Hampe v. Manke this principle was reiterated. Both of these cases, however, were decided before the adoption of the Uniform Negotiable Instruments Law by South Dakota, and no case seems to have arisen in this state since the adoption of that law wherein the effect upon the liability of a surety of an extension of time to the principal in a negotiable instrument has been considered. Section 119, Uniform Negotiable Instruments Law (S. D. Rev. Code 1919, § 1822), provides that a negotiable instrument is discharged:

"1.   By payment in due course by or on behalf of the principal debtor.

"2.   By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation.

"3.   By the intentional cancellation thereof by the holder.

"4.   By any other act which will discharge a simple contract for the payment of money.

"5.   When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

Some courts, the majority in number, hold that the modes of discharge of a person primarily liable, mentioned in this section, are exclusive.  See Brannan's N. I. L. (4th Ed.) 721.  Maud Blackford is a person primarily liable on the notes in this case, and, if we should follow the majority rule, we would have to hold that the adoption of the Negotiable Instruments Law abrogated the rule in the Schnose case and other like cases decided by this court prior to the adoption.  But in Brannan's N. I. L. (4th Ed.) (by Chafee) 723, it is said that, so far as concerns the questions involved in sections 119, 120, "there is no longer any hope of uniformity." The Uniform Negotiable Instruments Law, in so far as it relates to the discharge of the instrument or the discharge of persons liable on the instrument, having now lost all semblance of uniformity, we feel free to adopt that construction of the law which seems to us the more reasonable, and which enables us to give effect to other provisions of our Code.  The rule that the modes of dis-

charge of a person primarily liable on the instrument are exclusively those mentioned in section 119, N. I. L. (S. D. Rev. Code 1919, § 1822), and that one occupying the position of surety on such an instrument cannot be discharged in any other manner, has been adversely criticized by most text-writers on the subject, and it has been pointed out that application of the rule would permit a creditor holding sufficient security from the principal debtor to pay the entire debt to release such security and yet hold the surety, and that this "monstrous result," as it is designated on page 742 of Brannan's N. I. L., has actually been sanctioned in German American Bank v. Watson, 99 Kan. 686, 163 P. 637. In Scandinavian Am. Bank v. Watson, 41 N. D. 276, 172 N. W. 665, 670, the opinion of Judge Grace discussed at some length the provisions of section 119, 120, of the Negotiable Instruments Law, and he holds that, under subdivision 4 of section 119 providing that the instrument is discharged "by any other act which will discharge a simple contract for the payment of money," the instrument may be discharged "so far as the surety is concerned," by any act which would discharge a surety on a simple contract for the payment of money. He says:

"If the law of suretyship has not been repealed, and we hold that it has not, if the holder of the note should, without the knowledge or consent of the surety, extend the time of payment to a time certain, so far as the surety is concerned, the contract and the instrument, being a simple one for the payment of money, is discharged."

Under the provisions of our Rev. Code 1919, § 1491, "a guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal in respect thereto, in any way impaired or suspended."

And a surety is exonerated in like manner with a guarantor. Rev. Code 1919, § 1504. · It is plain that under the provisions of section 1491 a surety is exonerated or discharged from liability by an extension of time granted by the creditor to the principal debtor without the consent of the surety. Niblack v. Champeny, 10 S. D. 165, 72 N. W. 402. In adopting the Revised Code of 1919 the Legislature adopted the provisions we have quoted

for the exoneration of sureties and guarantors as part of the same enactment by which it adopted the provisions of the Negotiable Instruments Law in force in this state. The Negotiable Instruments Law thus adopted neither succeeded nor superseded the provisions of the Code relating to the discharge of a surety from liability by the creditor granting an extension of time to the principal debtor. Each stands upon equal footing with the other. It is the duty of this court to give effect to all parts of the Code, if that can be done. We think the provisions of section 1491 and section 1504, that a surety is discharged from liability by an extension of time granted by the creditor to the principal debtor without the consent of the surety, are not in conflict with a reasonable interpretation of provisions of section 1822. We hold that a negotiable instrument is discharged as to a surety by an extension of time granted to the principal without the surety's consent, and that such construction is authorized, in so far as a surety is concerned, by subdivision 4 of section 1822, which provides that the instrument is discharged by any act which will discharge a simple contract for the payment of money.

To the extent that a personal judgment is given against Maud C. Blackford, it is without support in the evidence and the findings. The judgment appealed from is modified by striking therefrom the allowance of $1,664 and interest to Smiley Gay Hardware Company, and the personal judgment against Maud C. Blackford; and, as so modified, the judgment and the orders denying a new trial are affirmed.

Appellant Maud C. Blackford is entitled to her costs against respondent Smith. Respondent Smith is entitled to his costs of appeal as respondent against both the defendants Ammon M. Blackford and Smiley Gay Hardware Company, and, in addition, the costs of his cross-appeal against Smiley Gay Hardware Company.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.