PETER W. FRENCH *vs.* JAMES W. BATES.

SAME *vs.* ALBERT D. CROMBIE.

SAME *vs.* SILAS M. SPENCER.

DANIEL W. KING *vs.* JAMES W. BATES.

SAME *vs.* ALBERT D. CROMBIE.

SAME *vs.* SILAS M. SPENCER.

Suffolk.　　November 16, 19, 1888.— May 6, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Promissory Note — Guaranty of Interest — Discharge — Subrogation.*

A religious society, to secure a first and a second mortgage upon its land, both given for money lent, made two promissory notes, each containing a promise to pay the principal sum in five years from date, "with interest semiannually, at the rate of eight per centum per annum, payable on the first days of January and July of each year during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid." A guaranty on each note, of even date therewith, signed by several persons, recited that the loans were made at their request, in consideration of which "we, the undersigned, hereby severally, and not jointly, (one sixth part each,) guarantee . . . the punctual payment of the interest on the above note, and in default of such payment by the promisor, we hereby promise to pay the same on demand." *Held,* that the payees could maintain separate actions against the guarantors to recover interest accruing after the maturity of the notes, and so long as the principal sums remained unpaid.

After the maturity of the notes and a breach of condition of the first mortgage, the first mortgagee covenanted with the second mortgagee, in consideration of a cash payment by him and of a guaranty for the payment of certain interest upon the first mortgage note until a certain date, not to foreclose the first mort-

gage before that date without the latter's written consent; not to indorse any payment so made upon that note so as to operate as a payment of principal or interest thereon; to permit him, at his sole expense, but in the name and for the benefit of the first mortgagee to collect that note; and to sell the first mortgage and note to him upon certain terms, with a proviso that, if such note was not paid or bought by the second mortgagee by that date, the latter was to forfeit all sums already paid by him to the first mortgagee, who upon receiving from any source more than a certain sum was to pay over the excess to such second mortgagee. *Held,* that there was no discharge of the guarantors.

SIX ACTIONS OF CONTRACT, by Peter W. French and by Daniel W. King, trustee of the estate of Sarah P. King, against the defendants as guarantors, to recover interest on certain promissory notes. Writs dated October 28 and 29, 1884. The cases were submitted to the Superior Court, and, after judgment for the defendant in each case, to this court, on appeal, on agreed statements of facts, in substance as follows.

On July 12, 1877, the plaintiff King, as such trustee, lent to the First Congregational Society of Maplewood the sum of $5,000, and the plaintiff French also lent to it a further sum of $2,500, in consideration of which that society duly executed and gave to each a promissory note for a corresponding amount, in which "The First Congregational Society of Maplewood, Mass., promises to pay" in one to French and in the other to King as trustee, "or order," the sums lent by them respectively, "in five years from this date, with interest semiannually, at the rate of eight per centum" per annum, "payable on the first days of January and July of each year during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid, reserving the right to pay five hundred dollars of the principal on the first day of July of each year."

On the same day the defendants and others signed agreements, written upon the same paper with and below each note, each of which recited that, "For value received, and in consideration of the loan for which the above note is given, which loan is this day made at our request, we, the undersigned, hereby severally, and not jointly," the defendants Bates and Crombie for "one sixth part each," and the defendant Spencer for one twelfth, "guarantee" to King and French respectively, "his executors, administrators and assigns, the punctual payment of the interest on the above note, and in default of such payment by the

promisor, we hereby promise to pay the same on demand, waiving demand on the promisor, and notice."

The society also on the same day duly executed and gave to King, as trustee, a first mortgage upon real estate owned by it in Malden, containing the usual power of sale to be exercised upon any breach of condition, to secure the payment of the note given to him, and of the instalments of interest thereon as they became due; and at the same time gave a second mortgage to French thereon to secure the note given to him and the interest thereon, which contained a like power of sale and was expressed to be subject to the mortgage to King. The society duly paid the interest on each note to King and French until July 1, 1882, but not afterwards, and subsequently to that date the defendants respectively paid certain sums only on account of the several proportions of interest claimed to be due from them, as such guarantors.

On September 5, 1882, King and French entered into the following agreement, under seal, the recital of facts in which was agreed to be true:

" Whereas, Daniel W. King, as he is trustee of the estate of Sarah P. King, is the holder of a certain mortgage given to him as trustee as aforesaid by the First Congregational Society of Maplewood, Mass., dated July 12, 1877, and recorded with Middlesex South District Deeds, lib. 1443, folio 261, said mortgage being the first mortgage upon the premises therein described; and whereas there has been and is a breach of the conditions of said mortgage, and said trustee has published notice that the premises conveyed by said mortgage will be sold on the sixth day of September current, under the power of sale contained in said mortgage; and whereas Peter W. French is the holder of the second mortgage upon said premises given to him by the said society, and wishes that the premises may not now be sold according to the published notice; now, therefore,

" This agreement, made by and between said King, as trustee as aforesaid, and said French, witnesseth, that the said French, in consideration of the promises and agreements hereinafter made by said King as trustee as aforesaid, hereby promises and agrees:

" First. That he, the said French, will, on or before the fifth day of October, A. D. 1882, pay to the said King the sum of

one thousand dollars in cash, and also the actual cash expense already incurred by said King, trustee, in advertising and preparing to sell under said first mortgage.

"Second. That he, said French, does hereby guarantee to said King, trustee, the prompt semiannual payment of interest on said first mortgage note accruing from this date to October 1, 1885, to the extent of seven per centum per annum on five thousand dollars till payment of said sum of one thousand dollars, and on four thousand dollars thereafter to said first day of October, 1885, and promises and agrees that he will pay any deficit of interest guaranteed by him within thirty days after such interest becomes due by the terms of the note secured by such first mortgage; also, that on or before December 1, 1882, he will pay all or any part of the interest accrued to this date at eight per centum, and then remaining unpaid.

"And in consideration of the foregoing, the said King, trustee, promises and agrees:

"1st. That the said first mortgage shall not be foreclosed, and that the premises conveyed thereby shall not be sold thereunder before the first day of October, 1885, without the consent in writing of said French or his legal representative; but this promise is upon the express condition that the said French shall faithfully perform the promises and agreements hereinbefore made by him.

"2d. That no payment made or to be made by said French, as above provided, shall be indorsed on the note secured by said first mortgage, or shall operate as payment of any part of the principal or interest of said first mortgage; so that the claims of the present or future holder of said first mortgage and note against the maker thereof, and against any guarantors other than said French, shall not be affected by any payments made or to be made by said French.

"3d. That the said French may, in said trustee's name, and for said trustee's benefit, but at his (said French's) sole charge and expense, take such steps as seem best to him to collect the said first mortgage note and interest, whether from the makers or guarantors thereof.

"4th. That the said trustee will, at any time before said mortgage note shall have been paid, sell, transfer, and assign to

the said French said first mortgage and note, together with all claims against any guarantors other than said French, upon the payment by said French to said trustee of the sum of five thousand dollars principal (i. e. four thousand dollars in addition to the one thousand dollars to be paid on or before October 5th, 1882), and the interest already accrued at eight per centum and then remaining unpaid, together with the interest accruing hereafter at seven per centum, as provided by the guaranty hereinbefore made by said French.

" 5th. In case said first mortgage note is not paid- by any party, and is not purchased by said French, on or before said first day of October, 1885, then the sums paid by said French shall be forfeited to the use of said trustee, who may proceed to sell under said first mortgage. But if said French, or his legal representatives and assigns, shall become the purchaser at such sale, then the said one thousand dollars shall be treated as part payment of the sum bid by said French, or his legal representatives and assigns, provided that the sum so bid shall be equal to the amount due on the mortgage note at seven per centum.

" 6th. That in case the payments made by said French, added to any payments which may be made at any time hereafter, or realized from a sale of the mortgaged property, on said first mortgage note by any other party or parties, shall together make a sum greater than the sum for which said trustee has above agreed to sell said first mortgage and note, the excess above said last mentioned sum shall be forthwith returned to said French. And this sixth promise and agreement said King makes not only as trustee, but also individually."

In pursuance of the terms of the above agreement, French paid to King the sums which he therein promised to pay to him, and at or about the times when he agreed to pay them, and such payments were not indorsed on the first mortgage note, but a separate account thereof was kept by King. Before November 20, 1882, a breach of the condition of the second mortgage was committed, and on that day French duly executed the power of sale contained in that mortgage, and sold the premises covered thereby to himself for the sum of one hundred dollars, and duly conveyed them to himself, by deed dated November 28, 1882. The expenses duly incurred by French by reason of the breach

of condition amounted to fifty dollars, and immediately after the execution of the power he indorsed on the note a payment of fifty dollars on account of the principal thereof, under date of November 20, 1882. No payments of interest or principal upon either note have been made to the plaintiffs except as above stated, and the first mortgage has not been foreclosed. The last three cases were brought by King at the expense of French.

If upon the above facts the plaintiffs were entitled to recover, judgment was to be entered for them for certain sums agreed upon; otherwise, judgment was to be entered for the defendants.

The cases were argued at the bar in November, 1888, and afterwards were submitted on the briefs to all the judges.

*L. L. Scaife,* for the plaintiffs.

*W. C. Cogswell,* ( *O. T. Gray* with him,) for the defendants.

FIELD, J. The First Congregational Society of Maplewood, on July 12, 1877, gave two promissory notes, one to King, as trustee, for the sum of five thousand dollars, and one to French for the sum of twenty-five hundred dollars. Each note contained a promise to pay the principal sum in five years from date, " with interest semiannually, at the rate of eight per centum " per annum, " payable on the first days of January and July of each year during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid, reserving the right to pay five hundred dollars of the principal on the first day of July of each year." The note to King was secured by a first mortgage, and that to French by a second mortgage, upon the real property of the society. On the same day the defendants in these cases, with other persons, signed on each note a guaranty to the payee as follows: " For value received, and in consideration of the loan for which the above note is given, which loan is this day made at our request, we, the undersigned, hereby severally, and not jointly (one sixth part each), guarantee . . . the punctual payment of the interest on the above note, and in default of such payment by the promisor, we hereby promise to pay the same on demand, waiving demand on the promisor, and notice."

These suits are brought by French and King respectively against three of the guarantors severally to recover interest accruing after the maturity of the notes.

The first question is, whether, by the terms of the guaranties, the guarantors are liable for the interest accruing after the maturity of the notes. The contention is, that, construing all the papers together, it appears that it was the intention of the parties that the guarantors should only be liable for the payment of interest until the principal debt became payable; that the payees relied wholly upon the society for the payment of the principal debt, and that it could not have been the intention that the guarantors should be liable for the payment of interest indefinitely, or be compelled to pay both principal and interest in order to relieve themselves from the liability to pay interest, if the payees did not choose to collect at maturity, by foreclosure of the mortgage or otherwise, debts drawing interest at the rate of eight per centum annually.

Whatever may have been the expectation of the parties, the contracts they actually made must be found in the written papers. Interest is payable on the principal sum of these notes after maturity at the rate of eight per centum per annum, by virtue of the contract, and it is payable as interest, and not as damages for breach of the contract to pay the principal sum. This, we think, would be held even by those courts which allow the statutory and not the stipulated rate of interest after maturity, when the provision is not express that the stipulated rate shall continue after maturity. See *Union Institution for Savings* v. *Boston*, 129 Mass. 82.

It has been suggested, that after the maturity of the notes separate actions could not be maintained by the payees to recover the interest and the principal, and that it is unreasonable to construe the guaranties as covering an incident of the debt when they do not cover the debt itself. Whether in an action to recover the principal the interest then due must be included as an incident, and if not included, whether, after judgment recovered for the principal debt, an action for interest could be maintained, need not be decided. See *King* v. *Phillips*, 95 N. C. 245; *Fake* v. *Eddy*, 15 Wend. 76. The promises to pay interest and to pay the principal are severable, and we see no objection to the maintenance of an action after the maturity of the notes upon an express promise to pay interest without including it in the principal debt. *Sparhawk* v. *Wills*, 6 Gray,

163. *Andover Savings Bank* v. *Adams*, 1 Allen, 28. We have no doubt that the payment of the principal sum at maturity, and the payment of interest either before or after maturity, or both, may be separately made the subject of a guaranty.

The guaranties promise the punctual payment of the interest; but from this we cannot infer that the guaranties were intended to be confined to the payment of interest accruing before the maturity of the notes, because, by the terms of the notes, interest accruing after maturity was made payable on the first days of January and July of each year, in the same manner and at the same rate as before, so long as the principal sum remained unpaid. If any inference could be drawn in construing guaranties of commercial paper from the usage of banks and business men to collect notes when they become due, there is not the same reason to draw the same inference when the notes have a long time to run, and are secured by mortgages on real property. It is notorious that such notes are often permitted to remain unpaid for a long time after maturity if the security is satisfactory. The notes themselves contemplate the possibility that the principal sums may not be paid at maturity, for they make provision for the payment of interest after maturity as well as before. In these respects these cases differ from *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244, and *Melick* v. *Knox*, 44 N. Y. 676.

It is argued that the manifest object of the guarantors was to prevent a foreclosure of each mortgage for non-payment of interest before the maturity of the notes. There is nothing in the agreed statement of facts that indicates this except that the guarantors promise to pay the interest only. The guaranties recite that the loans were made at the request of the guarantors. We do not know whether the guaranties were furnished because the lenders of the money wanted better security, or because the borrower wanted to be sure that there would be no foreclosure for breach of condition before the notes matured; but if the latter was the intention, it was not carried into effect, for it was not agreed that, if the promisor did not pay the interest as it became due, the mortgagees should, until the maturity of the notes, collect it of the guarantors, and not proceed to foreclose the mortgages. As there is no limitation in the guaranties,

and as the notes provide for the payment of interest after as well as before maturity, we cannot construe the papers as limiting the obligation of the defendants to the payment of interest accruing before the maturity of the notes. There is no further contention by the defendants in regard to the suits brought by French.

In the suits brought by King as trustee, the effect of the agreement entered into by King and French, and of the payments of money by French under this agreement, must be considered. French was second mortgagee, and as such had the right to redeem the land from the first mortgage; but he was under no obligation to pay the note secured by the first mortgage. If he paid it and took an assignment of the first mortgage, it must be considered, in the absence of any agreement or declaration of his to the contrary, that he paid it for the protection of himself as second mortgagee. As French in making the agreement with King did not act, or assume to act, in behalf of the maker of the note, or of the guarantors, they cannot avail themselves of the stipulations contained in the agreement. They are neither bound by those entered into by French, nor can they enforce those entered into by King. They are strangers to the agreement, and the agreement has no effect upon their rights and obligations under the guaranty. The neglect of the first mortgagee to foreclose the mortgage does not discharge the guarantors; they can pay the debt after its maturity whenever they choose, and compel the holder of the mortgage to discharge it or to assign it to them, but until they pay the debt, they cannot complain that the holder does not foreclose the mortgage. *Wilcox* v. *Fairhaven Bank*, 7 Allen, 270. *Allen* v. *Brown*, 124 Mass. 77. *Watertown Ins. Co.* v. *Simmons*, 131 Mass. 85.

The covenant not to foreclose the mortgage before October 1, 1885, is not an agreement giving time to the principal debtor, and does not discharge the guarantors, because, as has been said, the principal debtor is not a party to the agreement containing this covenant, and neither the principal debtor nor the guarantors could require the performance by King of any of his covenants contained in this agreement. *Frazer* v. *Jordan*, 8 El. & Bl. 303, 312. *Greely* v. *Dow*, 2 Met. 176.

The payments made by French under the agreement do not purport to have been made in behalf of the principal debtor, or of the guarantors; but it is expressly provided that they should not "operate as payment of any part of the principal or interest of said first mortgage"; and as French was under no obligation to make any payments on account of the debt secured by this mortgage, he could agree with King that any money he paid should be applied toward a purchase of the mortgage and of the debt secured by it, rather than toward a payment of this debt and a discharge of the mortgage. The security given to King has not been impaired by the acts of anybody, and can be transferred to the guarantors undiminished if they pay the debt.

For these reasons a majority of the court are of opinion that the guarantors are liable to pay interest on the notes so long as the principal sum remains unpaid, and that in the suits brought by King as trustee the facts do not show that they have been discharged. The judgment for the defendants must be reversed, and there must be judgment for the plaintiffs in the suits for the amounts respectively agreed upon in the agreed statements of facts.                                                *So ordered.*