SOPHIE C. BROSEMER, Plaintiff, v. SOPHIA BROSEMER, EMMA MONGIN and CAROLINE F. BROSEMER, Impleaded with L. BROSEMER BREWING Co., ALBERT E. BROSEMER and JOHN F. BROSEMER, Defendants.

(Supreme Court, Oswego Trial Term, February, 1917.)

Negotiable instruments — construction of " agreement binding upon the holder " — extension of time of payment — when plaintiff entitled to recover on note against the makers and indorsers — Negotiable Instruments Law, § 201.

The words " agreement binding upon the holder " in section 201 of the Negotiable Instruments Law, which declares that a person secondarily liable on the instrument is discharged " by any agreement binding upon the holder to extend the time of payment," etc., should be construed to mean an agreement binding upon the holder made with the principal debtor.

Where upon the refusal of a bank to renew a note made by a corporation for a loan and indorsed by its stockholders one of them, plaintiff herein, upon purchasing said note gave her own note in part payment and as collateral security therefor left the sold note with the bank and upon payment of her own note took up and became the sole owner of the note held by the bank which could at any time it held said note as collateral accept payment or bring an action thereon, if requested by the indorsers, plaintiff is entitled to recover thereon in an action against the makers and indorsers.

THIS action was tried at an Oswego County Trial Term, held at the village of Pulaski in May, 1916. At the close of the evidence, both sides moved for a directed verdict; the jury was excused and the case was submitted to the court.

P. W. Cullinan, for plaintiff.

Barnes & Mournigham, for Sophia Brosemer, Emma Mongin and Caroline F. Brosemer, defendants.

HUBBS, J.   In September, 1909, the Second National Bank of Oswego, N. Y., loaned to the L. Brosemer Brewing Company $10,000 upon its unindorsed note. The note was renewed from time to time upon the same kind of a note.   The L. Brosemer Brewing Company was a domestic corporation and all of its stock was owned by members of the Brosemer family, five brothers and sisters.   Each owned one-fifth of the stock.   The time came when the bank became dissatisfied with the loan and refused to renew it unless the five stockholders of the company would indorse the note.   This was done and the bank carried the loan for some time secured by a note indorsed by the five stockholders of the company.

On June 27, 1913, the said company delivered to the bank its note for $10,000, dated that day and payable three months from date, indorsed by the said five stockholders, the defendants in this action.   This note was given to take up a prior one for the same amount and indorsed by the same parties.   The note was not paid when due on September 29, 1913, and it was duly protested.   The bank refused to renew the note and insisted that it be paid.

At the time the last note became due the plaintiff, who is the wife of John F. Brosemer, one of the defendants, had an interview with the three defendants who are defending herein, Sophia and Caroline F. Brosemer and Emma Mongin, in which it was understood and agreed that the plaintiff should purchase the note from the bank.   The plaintiff thereafter entered into a written agreement with the bank to purchase said note.   That agreement with the bank was dated December 1, 1913, and it acknowledged the receipt from the plaintiff of $5,000 in part payment of said note and recited as follows:   " The balance of

the purchase price of said note is to be paid in two months from the date hereof according to the tenor of a certain promissory note in writing, bearing date this day, made by said Sophie C. Brosemer, payable two months after date to the order of John F. Brosemer, at the Second National Bank, Oswego, N. Y., and indorsed by him. * * * That said bank may retain said note so sold to Sophie C. Brosemer as collateral security for the payment of said note of five thousand dollars ($5,000) made by Sophie C. Brosemer." Thereafter, the plaintiff paid her $5,000 note to the bank and took up and became the sole owner and holder of the $10,000 note given to the bank by the brewing company and indorsed by the defendants. Later she commenced this action upon said note against the brewing company and the indorsers thereon. The three defendants defending herein set up in their answer and contended upon the trial that they were accommodation indorsers upon said note and that they had been released from liability thereon by reason of a binding extension agreement made by plaintiff, whereby the time of payment of said note was extended without reserving the right of recourse against said defendants.

The extension agreement relied upon by the defendants is the agreement entered into between the plaintiff and the Second National Bank at the time of the purchase of said note by plaintiff from said bank and hereinbefore referred to.

The plaintiff contends that the defendants were in fact makers of the note in question and therefore primarily liable thereon, although they were in form indorsers and were treated as such by the bank. I have found, however, that defendants were not makers of said note, but indorsers.

By the agreement between the plaintiff and the Second National Bank, the bank sold the note to plaintiff upon her paying $5,000 in cash and giving her note for $5,000, payable in two months, and leaving the note in question with the bank as collateral. The agreement reads: " That said bank may retain said note so sold to Sophie C. Brosemer as collateral security for the payment of said note of five thousand dollars ($5,000) made by Sophie C. Brosemer." Under this agreement, the bank held said note as collateral security to the note of $5,000 given by the plaintiff, up to the time when plaintiff paid her $5,000 note and took the note in question.

During the period that the bank held the note as collateral, it was in a position at any time to accept payment or to bring an action thereon if requested by defendants so to do. Crawford's Ann. Neg. Inst. Law, §§ 53, 90, and notes; 8 Corpus Juris, 600.

Assuming, however, that there was an agreement between the plaintiff and the bank to extend the time of payment of the note in question, such an agreement would not have the effect of releasing the indorsers on the note.

Defendants contend that the agreement between the plaintiff and the bank released the defendants, who were, as they say, secondarily liable as indorsers, because of section 201 of the Negotiable Instruments Law, which reads as follows: "A person secondarily liable on the instrument is discharged: * * * 6. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless the right of recourse against such party is expressly reserved."

Prior to the enactment of the " Negotiable Instruments Law " the rule of law which defendants invoke

was usually stated substantially as follows: " If a creditor or obligee, by a valid and binding agreement, without the assent of a surety, gives further time for payment or performance to the *principal debtor,* the surety will be discharged." 32 Cyc. 191.

In the case of *National Park Bank* v. *Koehler,* 204 N. Y. 178, Judge Gray wrote: " The existence of the general rule is not in dispute that, if there has been an agreement by the *creditor* with the *principal debtor,* which extends the time of payment of the debt, without the consent of the surety, or indorser, the latter is discharged." As stated by Judge Gray, the rule that applies to a surety applies also to an indorser. Brandt on Suretyship (3d ed.) § 3.

It will be noted that subdivision 6 of section 201 of the Negotiable Instruments Law does not use the words *principal debtor,* or their equivalent, the wording being " By any agreement binding upon the holder to extend the time of payment." Does that mean by any agreement binding upon the holder made with a stranger to the instrument, or must the binding agreement be made with the principal debtor? The question does not seem to have been passed upon since the enactment of the statute in question or of similar statutes in other states.

It seemed to be well settled prior to the enactment of the Negotiable Instruments Law that an agreement between the holder of the instrument and a third person would not release the surety or indorser. The general rule, practically as above stated, has often been stated by the courts of this state, but the exact question does not seem to have ever been passed upon in any reported case in this state.

In *Fraser* v. *Jordan,* 8 El. & Bl. (Q. B. 1858) 303, the plea stated that the holder entered into a valid

binding agreement with a stranger to extend the time
of payment thereby releasing the surety. Coldrige,
J., after stating that a binding agreement *between the
holder and principal* released the surety, said: " We
think the doctrine ought not to be extended to the case
of a contract with a stranger. The principal debtor,
having given no consideration for the promise, has
no ground to complain of a breach of it, and cannot
say that faith has been broken with him. There is no
privity of contract with him; and we see nothing on
which any right, either in law or in equity (see Lord
Abinger's 5 M. & W. 253–4) for him to insist on such
a contract, can be founded. The stranger may have
some private reason of his own to wish for some indul-
gence to be shown, and if he has given a good consid-
eration may be entitled to damages, nominal, or large
or small, according to any legal interest he may have;
but surely he is the only person to take advantage of
his contract. No such doctrine, as that there can be a
discharge in such case arising from a contract with a
stranger, has ever yet been established. In all the
text-books which were cited, the rule is laid down as to
a binding contract with the *acceptor or principal
debtor."* The plea was held to be bad. This case has
been followed in England. *Clark* v. *Birley,* 41 Ch.
Div. (North, J., 1889) 422, 434; The Laws of England,
Vol. 15, 553. The same has been held in the following
cases in our own country: *Herbert* v. *Servin,* 41 N. J.
L. 225; *Parker* v. *Taylor,* 91 N. W. Rep. (Neb.)
537; *Cheek* v. *Glass,* 3 Ind. 286; *Wright* v. *Inde-
pendent Nat. Bank,* 96 Va. 728. See also the following
authorities where the rule is stated: 8 Corpus Juris,
429; Childs' Sur. & Guar. § 108; 32 Cyc. 198; Norton
Bills & Notes (3d ed.), 307.

It would seem that the reasoning of the court in the

case of *Fraser* v. *Jordan,* which has for so many years been uniformly followed, is just as applicable to the construction of the statute in question as it was as a statement of the common law, when written. It would seem that the words of the statute " agreement binding upon the holder " should be construed to mean an agreement binding upon the holder made with the principal debtor.

By a valid agreement to give time is meant an agreement for the breach of which the maker or the acceptor has a remedy, either at law or in equity. *Veazie* v. *Carr,* 3 Allen, 14.

It has been said that the statute in question should be regarded simply as a codification of the common law. *Chemical National Bank* v. *Kellogg,* 183 N. Y. 98.

In the case of *National Bank of Mechanicsburg* v. *Graham,* 246 Penn. St. 256, the court, in writing of the provision in the Negotiable Instruments Law of Pennsylvania, which reads the same as the New York statute, said: " This was simply declaratory of the existing law."

It is undoubtedly true that the words of the statute are to be given their natural and common meaning and when the meaning is clear and free from doubt it should be enforced regardless of the holdings of the courts prior to its enactment. Where there is doubt, however, and the meaning contended for is contrary to all former decisions and entirely without support in the law as it stood before the enactment, then the law as it stood before the enactment becomes a valuable guide in finding the true meaning of the statute.

Judgment for plaintiff.