ZASTROW, Appellant, v. KNIGHT, et al, Respondents.

(229 N. W. 925.)

(File No. 6915. Opinion filed March 21, 1930.)

*Danforth & Barron,* of Sioux Falls, for Appellant.

*Cheever, Collins & Cheever,* of Brookings, for Respondents.

*W. W. Knight,* of Brookings, and *S. E. Anderson* and *John A. Anderson,* pro se.

CAMPBELL, J. Plaintiff instituted this action against defendants in July, 1928, to recover a principal balance of $2,500, together with some interest, upon a promissory note executed and delivered by defendants to plaintiff July 29, 1919, bearing interest at 6 per cent per annum, payable July 29, 1922.

The answer of the defendants admits the execution of the note, plaintiff's ownership thereof, and the balance due thereon, and, by way of defense, alleges substantially as follows:·

First. That as a part of the same transaction with the execution of the note and as security for the payment of the note defendants duly executed, acknowledged, and delivered to plaintiff a second mortgage upon certain real estate by defendants then owned.

Second. That very shortly thereafter defendants, with full knowledge and consent of plaintiff, sold and conveyed said mortgaged realty by warranty deed to one Hoy, who assumed and agreed to pay said mortgage.

Third. That Hoy in turn conveyed said realty to another grantee, and Hoy's grantee to another, and so on for several successive conveyances, each of the grantees respectively, by the express terms of the conveyances to them, taking the premises subjct to said mortgage, but none of said grantees after Hoy assuming or agreeing to pay the mortgage.

Fourth. That Hoy or his grantees made all interest payments accruing to the maturity of the note, and that, when the note became due, the realty in question was owned by Clear Lake Security Company, a corporation, one of the grantees subsequent to Hoy; the legal title thereto being for the convenience of said corporation in the name of one E. E. Walseth, secretary of the corporation, the title of said corporation being subject to the mortgage aforesaid, but said corporation not having assumed or agreed to pay said mortgage.·

Fifth. That on September 1, 1922, the realty being then owned by Clear Lake Security Company as aforesaid, plaintiff, without the knowledge or consent of defendants or any of them, orally agreed with the said corporation and its secretary Walseth as follows, to wit: That the plaintiff would extend the time of

payment of the mortgage debt one year, that is, to July 29, 1923, in consideration whereof said corporation would immediately pay to the plaintiff, to apply on the principal of said mortgage debt, the sum of $500, together with interest thereon at 6 per cent from July 29, 1922, to September 1, 1922, and that said corporation would pay to plaintiff on July 29, 1923, the sum of $2,500, being the remaining principal of the mortgage debt, together with interest thereon from July 29, 1922, to July 29, 1923, at 7 per cent, being 1 per cent in excess of the amount specified in the note representing the mortgage debt, and that, pursuant to and in execution of said oral agreement, said corporation did pay to the plaintiff on September 1, 1922, the sum of $502.50 on said mortgage debt, being $500 on the principal and $2.50 on the interest.

Sixth. That at the time of making such payment the said E. E. Walseth, acting for himself and for said corporation, made a written memorandum of such payment and extension agreement in duplicate, one copy of which was delivered to and retained by plaintiff; said written memorandum being in the following form:

"No. 6357 Incorporated March, 1892

"First National Bank, Capital and Surplus, $50,000.00. Clear Lake, South Dakota. J. A. Thronson, President, J. E. Walseth, Vice President, E. E. Walseth, Cashier, C. W. Force, Ass't Cashier, Arnold E. Berg, Ass't Cashier.

"Remittance Letter.

. . "Clear Lake, So. Dak., Sept. 1, 1922.
 "Aug. Zastrow, City.

"Letter No. ————.

 "We report collections and remit as follows: ————.
"Our No. 9316
"Your No.
"Name, W. W. Knight et al.
"Principal End 500.00
"Int. or Disc 2.50
"Collection $502.50
"Int on 400 7/1 to 9/1
"2500 Bal Extended 1 yr. 7%
"Our Charges: Commission ————.
"Our ————. We Credit your a/c $502.50

"Respectfully yours,

"E. E. Walseth, Cashier.

"Special attention by Bank Attorney if desired."

Seventh. That pursuant to said agreement said corporation and Walseth continued to pay interest on the balance of $2,500 principal of said mortgage debt at the rate of 7 per cent per annum from July 29, 1922, to July 29, 1926, and made some partial interest payments thereafter computed at the rate of 7 per cent per annum.

Defendants further alleged "that by reason of the facts aforesaid, defendants are not liable for the payment of said note or any part thereof," and prayed for the dismissal of the action, with costs.

To this answer plaintiff demurred upon the ground that the same did not state facts sufficient to constitute a defense to plaintiff's cause of action, and, the matter coming regularly on for hearing, the learned trial judge duly made and entered his order overruling said demurrer, from which order plaintiff has now appealed.

The rights and liabilities of the first grantee, Hoy, who assumed the mortgage, or of the intervening grantees between Hoy and Clear Lake Security Company (which for convenience will be hereinafter referred to as "the corporation"), are in no manner involved at the present time in this case. So far as the present proceeding is concerned, the rights and liabilities of plaintiff and respondents with reference to each other are exactly what they would have been if respondents, after the execution and delivery of the note and mortgage, had conveyed the premises directly to the corporation with the knowledge of appellant, the corporation taking title in the name of Walseth for convenience, and taking the premises subject to the mortgage, but not assuming or agreeing to pay the same, and thereafter the same transactions had been had between appellant and the corporation as are pleaded in the answer.

Though perhaps comparatively modern in origin, it is nevertheless today an established and universally accepted doctrine of the law of suretyship that a binding agreement between the creditor and the principal debtor, whereby the creditor extends the time for payment or performance, or agrees for a definite period to forbear or postpone the enforcement of his remedy, entirely discharges the surety, whether he is harmed thereby or not. Williston on Contracts, § 1222; Stearns on Suretyship (3d Ed.) § 81. This

equitable doctrine is also applied to a number of situations which are not in any strict sense suretyship, but which partake in equitable nature of the suretyship relation. It is the clear weight of authority in this country now that, when a mortgagor conveys mortgaged realty to a grantee, who agrees with the mortgagor to assume and pay the mortgage, a quasi suretyship relation arises between such parties, and as between them the liability of the grantee upon his covenant of assumption is primary and the liability of the mortgagor becomes secondary. The equitable rights between the parties so situated are substantially the same as those between principal and surety, and, if the creditor (mortgagee) receives notice of the existence of such situation, then from that time forward he must observe the equities therefrom arising. If, after knowledge of such situation, the mortgagee, without the consent of the mortgagor, extends time to the assuming grantee, the mortgagor, upon the equitable principle above set out, is entirely discharged. See Stearns on Suretyship (3d Ed.) § 90 15 Harv. L. Rev. p. 398. This doctrine of discharge of a mortgagor by the action of a mortgagee with knowledge entering into a valid agreement for extension of time with an assuming grantee without the consent of the mortgagor has had the approval of this court directly or indirectly in at least the following cases: Dillaway v. Peterson, 11 S. D. 210, 76 N. W. 925; Miller v. Kennedy, 12 S. D. 478, 81 N. W. 906; Hull v. Hayward, 13 S. D. 291, 83 N. W. 270, 79 Am. St. Rep. 890; Iowa Loan & Trust Co. v. Schnose, 19 S. D. 248, 103 N. W. 22, 9 Ann. Cas. 255; Hampe v. Manke, 28 S. D. 501, 134 N. W. 60; Fry v. Ausman, 29 S. D. 30, 135 N. W. 708, 39 L. R. A. (N. S.) 150, Ann Cas. 1914C, 842; Mundt v. Messenger Publishing Co., 42 S. D. 608, 176 N. W. 740; John Deere Plow Co. v. Tuinstra, 47 S. D. 555, 200 N. W. 61; Smith, Superintendent, v. Blackford (S. D.) 228 N. W. 466.

Respondents maintain that the foregoing doctrine, which is settled as the law of this state as above pointed out, is applicable to the instant case, even though the corporation did not assume and agree to pay the mortgage, but merely took subject to the mortgage. Appellant, on the other hand, contends, first, that there is no valid or binding extension agreement shown by the facts in this case between appellant and the corporation; and, second, that the foregoing doctrine has no application in any event, because the

corporation merely took subject to the mortgage without assuming the payment thereof, and is a stranger to the mortgage debt, and an extension agreement between appellant and the corporation, even if valid as between them, would in no manner discharge respondents or affect appellant's rights against respondents on the mortgage debt.

We will consider, first, the matter of the agreement for extension of time between appellant and the corporation.

In this connection appellant urges that the agreement in question is entirely void because of that portion of section 1547, R. C. 1919, reading as follows:

"A mortgage of real property can be created, renewed or *extended* only by writing, executed with the formalities required in the case of a grant of real property."

This statute came into our law in territorial days as subdivision 2, section 1722, Civil Code of 1877, and has since continued without change. The same statute persisted after statehood in North Dakota. Section 6725, Comp. Laws N. D. 1913. The statute was adopted verbatim from section 2922, Cal. Civ. Code 1872.

We concur in the view previously taken by the courts of California and North Dakota that the word "extended" in this statute had no relation to the extension of time of payment but refers to extending the mortgage in the sense of broadening the mortgage so that it will stand as security for some additional or different debt other than or beyond the debt originally thereby secured. London, etc., Bank v. Bandmann, 120 Cal. 220, 52 P. 583, 65 Am. St. Rep. 179; People's State Bank v. Francis, 8 N. D. 369, 79 N. W. 853.

In urging the invalidity of the agreement between appellant and the corporation, appellant also relies upon section 908 R. C. 1919, reading as follows:

"*Written Contract—How Altered.* A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

We do not think the writing referred to in the answer of respondents in this case and hereinbefore set out could be construed to be "a contract in writing" within the meaning of section 908. The writing in question was not signed by appellant, nor by the corporation, nor by Walseth as secretary of the corporation. It

was merely a memorandum signed by Walseth as cashier of the First National Bank of Clear Lake, S. D., advising appellant of a credit to his account on the books of that bank in the amount of $502.50, and explaining somewhat the source of the credit, a duplicate of which was sent to, and retained by, appellant. We do not see how that could possibly be construed to be a written contract between appellant and the corporation or Walseth as secretary of the corporation. Neither was the agreement between appellant and the corporation, treating it as an oral agreement, completely executed on September 1, 1922, when it was made. The agreement on the part of appellant was to forbear until July 29, 1923. Manifestly, the agreement on his part could not be completely performed and executed until July 29, 1923. The agreement on the part of the corporation was to pay $500 and some interest on September 1, 1922, and $2,500 plus a year's interest at 7 per cent on July 29, 1923. The agreement on the part of the corporation was executed when made to the extent only of the payment of $502.50. Beyond that it was entirely executory.

We do not believe, however, that section 908, R. C. 1919, has any application to the situation here presented, and on this point we approve the language of Smith, J., in his dissenting opinion in the case of Slate v. Eastman, 46 S. D. 166, 191 N. W. 450, 451, as follows:

"I am of the view that the oral agreement for extension of time of payment of a promissory note made upon a sufficient consideration after the execution of the note is not invalid under section 908, Revised Code. Such an agreement does not change the terms of the note. The note matures regardless of the oral agreement, but the right to enforce payment at maturity is suspended until the time of extension has expired."

Appellant held a promissory note and a mortgage securing the same. The corporation was not a party to either of these documents. The corporation had never assumed or agreed to pay the note, and was not liable thereon. It was, however, the owner (expressly subject to the mortgage) of the mortgaged real estate to which appellant was entitled to resort for the satisfaction of his mortgage debt evidenced by the promissory note of respondents. Under these circumstances, the corporation paid $502.50 on the note, which it was not bound to pay, and promised to pay $2,500

and interest thereon July 29, 1923, which it had not previously been obligated to do. This payment and promise were ample consideration for the agreement by appellant to "extend the time" to July 29, 1923. We do not think it is material that words were used relating to extension of time. The note was still a past due note just as much as it had been before. The substance and legal effect of the agreement between appellant and the corporation was that, upon a valid and sufficient consideration, appellant promised the corporation that he would postpone his remedy upon his mortgage against the land of the corporation until July 29, 1923, and that until that time he would forbear from making any claim against said land by way of foreclosure for the satisfaction of his past due note secured by mortgage. If appellant, under the facts disclosed by the answer in this case, had instituted a proceeding to foreclose his mortgage on January 1, 1923, it seems to us very clear that the corporation could have enjoined such proceeding, not on the ground that the note was not due, but upon the ground that appellant for a valuable consideration had promised and agreed with the corporation to forbear from seeking this remedy upon his past-due note until July 29, 1923.

Assuming the validity of the extension agreement between appellant and the corporation, we come now to examine the effect of that agreement upon appellant's rights against respondent on the mortgage note. Respondents maintain that they are completely discharged. Appellant maintains that his rights against respondents upon the note are in no manner affected. We think neither position is entirely correct.

The fundamental reasons for granting an absolute discharge to the surety where the creditor without the consent of the surety extends time to the principal are twofold: First, that the risk of the surety is thereby increased; and, second, that the creditor has thereby limited the surety's right to pay at any time and proceed against the principal by way of subrogation. Williston on Contract, § 1225; Stearns on Suretyship (3d Ed.) § 81. It is the duty of the creditor to refrain from doing anything which would impair, delay, or defer the surety's right to pay at any time and proceed immediately against the principal by way of subrogation. When a mortgagor conveys to a grantee, who assumes and agrees of pay the mortgage, such grantee becomes personally liable for

the debt. As between themselves, the assuming grantee becomes the principal debtor to the entire extent of the mortgage debt. The original mortgagor may pay the debt at any time when or after it becomes due, and is thereupon entitled by way of subrogation to the rights of the mortgagee to foreclose the mortgage and to proceed personally against the assuming grantee. If the mortgage creditor, with knowledge of that situation, extends time to the assuming grantee, he has impaired these rights of the original mortgagor, who is thereby immediately and completely discharged. Appellant argues that a grantee who takes subject to, but not assuming, the mortgage, does not become personally liable for the mortgage debt. This is undoubtedly true. Granger v. Roll, 6 S. D. 611, 62 N. W. 970. Appellant therefore argues that, so far as concerns the mortgage debt, the grantee, under such circumstances, is a mere stranger and not a principal, and that an agreement by the creditor with a third person other than the principal for extension of time does not discharge a surety. It is probably true, as a matter of the law of suretyship, that the extension agreement on the part of the creditor which discharges the surety must be an agreement with the principal, or at least an agreement of which the principal has a legal right to avail himself. Brosemer v. Brosemer, 99 Misc. Rep. 101, 162 N. Y. S. 1067; French v. Bates, 149 Mass. 73, 21 N. E. 237, 4 L. R. A. 268; Wright v. Ind. National Bank, 96 Va. 728; 32 S. E. 459, 70 Am. St. Rep. 889.

Appellant, in urging that the grantee subject to the mortgage is a stranger to the mortgage debt, and therefore that an extension agreement with him does not affect the original mortgagor, overlooks the fact that to the extent of the value of the security such grantee is not a stranger to the transaction. Respondents, on the other hand, in urging that extension to the grantee under such circumstances entirely discharges the original mortgagor, fall equally into error by failing to observe that there is no relation analogous to principal and surety under such circumstances between the original mortgagor and the grantee subject to the mortgage to any other or further extent than the value of the transferred security.

The distinction between the rights and liabilities of a grantee assuming a mortgage and a grantee who merely takes subject to a mortgage without assuming the payment of the mort-

gage is quite plain. See Pomeroy, Equity Jurisprudence (4th Ed.) §§ 1205, 1206; 15 Harv. L. Rev. p. 398; Steans on Suretyship (3d Ed.) § 90. When the grantee assumes the mortgage debt as between the grantee and the mortgagor, not only is the land a primary fund for the payment of the debt, but likewise the personal liability thus assumed by the grantee. On the other hand, when the grantee merely takes subject to the mortgage, while it is true that the grantee assumes no personal liability whatever, nevertheless the security in his hands is liable for the payment of the mortgage debt, which liability as between the grantee and the mortgagor is primary. Therefore, to the extent of the value of such security properly applicable to the mortgage debt, the original mortgagor and the grantee subject to the mortgage stand in a relation one to another, which, while not a true suretyship, is nevertheless equitably analogous thereto and subject to the operation of the same principles. The original mortgagor is entitled to pay the debt at any time and to be immediately subrogated to the right of the mortgagee to foreclose the mortgage, although he has no personal claim against the grantee, and the mortgagee has no personal claim against such grantee to which the mortgagor could be subrogated.

The cases dealing with the effect on the liability of the original mortgagor of an extension given by a mortgagee to a grantee who took subject to, but without assuming, the mortgage have not been entirely unanimous. It has been held that the rights of the mortgagee against the mortgagor are not in any manner affected thereby, as appellant contends in this case. Chilton v. Brooks, 72 Md. 554, 20 A. 125. It has also been held that, under such circumstances, the mortgagor is released entirely, as respondents contend in this case. Braun v. Crew, 183 Cal. 728, 192 P. 531.

The weight of authority, however, and we are convinced the sounder reasoning, is in favor of the view we have above indicated that, under such circumstances, the original mortgagor is released to the extent of the value of the security properly applicable to the mortgage debt in the hands of the grantee at the time the extension is granted. To this effect are Murray v. Marshall, 94 N. Y. (49 Sickels) 611; Brewer v. Staples, 3 Sandf. Ch. (N. Y.) 579; Travers v. Dorr, 60 Minn. 173, 62 N. W. 269; Bunnell v. Carter, 14 Utah, 100, 46 P. 755. Murray v. Marshall, supra, is a leading case upon the question, and in that case the court said in part as follows:

"While, as we have said, no strict and technical relation of principal and surety arose between the mortgagor and his grantee from the conveyance subject to the mortgage, an equity did arise which could not be taken from the mortgagor without his consent, and which bears a very close resemblance to the equitable right of a surety, the terms of whose contract have been modified. We cannot accurately denominate the grantee a principal debtor, since he owes no debt, and is not personally a debtor at all, and yet, since the land is the primary fund for the payment of the debt, and so his property stands specifically liable to the extent of its value in exoneration of the bond, it is not inaccurate to say that as grantee, and in respect to the land, and to the extent of its value, he stands in the relation of a principal debtor, and to the same extent the grantor has the equities of a surety. * * * When the mortgagor in this case sold expressly subject to the mortgage, remaining liable upon his bond, he had a right as against his grantee to require that the land should first be exhausted in the payment of the debt. * * * When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away th vendor's original right of subrogation * * * But it does not follow that the vendor was thereby wholly discharged. The grantee stood in the quasi relation of principal debtor only in respect to the land as the primary fund, and to the extent of the value of the land. If that value was less than the mortgage debt, as to the balance he owed no duty or obligation whatever, and as to that the mortgagor stood to the end, as he was at the beginning, the sole principal debtor. From any such balance he was not discharged, and as to that no right of his was in any manner disturbed. The measure of his injury was his right of subrogation, and that necessarily was bounded by the value of the land. The extension of time, therefore, operated to discharge him only to the extent of that value. At the moment of the extension his right of subrogation was taken away, and at that moment he was discharged to the extent of the value of the land, since the extension barred his recourse to it, and once discharged he could not again be made liable. * * *"

One further contention of appellant requires brief mention herein. The liability of respondents in this case originated by reason of the fact that they were parties primarily liable upon a

negotiable promissory note. Appellant advances the view that, since the adoption of the Uniform Negotiable Instrument Act in this state, that law (Rev. Code 1919, §§ 1705-1897) alone must be looked to in determining whether or not a party who has become liable upon a negotiable instrument is discharged. Appellant contends that, where the liability arises by virtue of a signature upon a negotiable instrument, the general principles of suretyship are limited by the provisions of the Negotiable Instrument Law; that section 119, Negotiable Instrument Law (section 1822, R. C. 1919), specifies the methods whereby a party primarily liable upon a negotiable instrument may be discharged and that those methods are exclusive. It is to be observed that section 120, Negotiable Instrument Law (section 1823, R. C. 1919), provides that a party secondarily liable may be discharged by extension of time or postponement of right to enforce, but no such provision is made with reference to discharging the party primarily liable. Appellant therefore maintains that, inasmuch as the respondents are parties primarily liable on a negotiable instrument, they can only be discharged in the manner provided by section 119, Negotiable Instrument Law, supra, and are not discharged by valid extension of time, the general principles of surety ship to the contrary notwithstanding. Upon this question there is admittedly a marked conflict in the authorities. This precise point, however, was recently presented to this court in Smith v. Blackford, 228 N. W. 466, and was considered with some care and determined adversely to the contention of appellant herein. We think the holding of Smith v. Blackford on this point follows the view sounder in principle, and we adhere thereto.

We are therefore of the opinion that by a valid and binding agreement appellant in the instant case precluded himself from resorting to the mortgage during the period September 1, 1922, to July 29, 1923. Immediately upon the making of that agreement and by the making of it, appellant knowingly placed respondents, without their consent, where during that period of time they could not, if they desired, pay the mortgage debt and proceed immediately by way of subrogation to foreclose the mortgage. This was an interference by appellant with the rights of respondents which equity will not permit, and by the making of such agreement with the corporation appellant must be held to have discharged

the respondents of liability upon the original mortgage debt, not entirely, but to the extent of the value of the land properly applicable to the mortgage debt on September 1, 1922.

 The mortgage in question was a second mortgage in its inception. The answer does not allege how much value there was in the land on September 1, 1922, over and above prior incumbrances, if any still existed, properly applicable to the note here sued upon. To the extent of such value, if any, in view of the other allegations of the answer, respondents should stand discharged. The burden is upon respondents, however, to plead and prove such value in order to establish a defense pro tanto. There is nothing in the answer from which it is possible to determine to what extent, if at all, respondents were discharged by the conduct of appellant. The answer therefore fails to state facts sufficient to establish a defense to plaintiff's cause of action, and the order appealed from must be, and it is, reversed.

BROWN, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.