**Herbert HERFF, Plaintiff,**

v.

**J. M. ROUNTREE, Director of Internal Revenue, Defendant and Third-Party Plaintiff,**

**Mrs. Minna G. HERFF, Third-Party Defendant.**

**Civ. No. 1995.**

United States District Court
M. D. Tennessee, Nashville Division.
Feb. 23, 1956.

Ed M. Lowrance, of Lowrance & Stivers, Memphis, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., and Geo. Reeder, Dept. of Justice, Washington, D. C., for defendant.

WILLIAM E. MILLER, District Judge.

This is an action by plaintiff, Herbert Herff, for refund of income taxes for the year 1949 in the amount of $18,626.17. The issue posed is whether the amount paid in 1949 by Southwestern University of Memphis to satisfy a mortgage of the taxpayer constituted income to him for that year within the meaning of Section 22(a) of the Internal Revenue Code of 1939, 26 U.S.C.A.

On December 11, 1947, the plaintiff Herff entered into an agreement with Southwestern reciting that it was his intention to acquire property in Memphis to be used by himself and his wife as a residence during their lives and that it was his desire that title to the property should be vested in Southwestern. It was agreed that Herff would acquire the property at his own expense, reserving the right to mortgage the property in an amount not to exceed the purchase price plus the cost of any improvements added thereto; that the mortgage and mortgage notes would be signed by him; that he would deed the property without liability to Southwestern on the mortgage, and the title thereto would be vested in Southwestern, subject to the right of plaintiff and his wife to live therein during their natural lives. It was further provided: "Annually, first party (Plaintiff) expects to make substantial contributions to second party (Southwestern). Second party may use such contributions to apply to the payment of the mortgage, together with interest thereon, so that ultimately said property will belong to second party, free and clear of all obligations."

On December 13, 1947 plaintiff submitted a copy of the agreement to the Commissioner of Internal Revenue and requested a ruling as to whether the amounts which he proposed to pay to Southwestern pursuant to the agreement would constitute allowable deductions on his income tax returns for each of the years in which such payments were made.

In response to this request the Commissioner, by his letter to the plaintiff of December 19, 1947, ruled that gifts or contributions made to Southwestern which it might use to discharge the mortgage indebtedness would constitute allowable deductions for the year in which they were made, provided that such contributions when added to other

allowable contributions did not exceed 15 per cent of the taxpayer's adjusted gross income. He further ruled, subject to the same limitation, that the present value of the remainder interest in the property at the time of transfer to Southwestern, would constitute an allowable deduction in computing the plaintiff's net income in the taxable year in which the property should be deeded to Southwestern.

Pursuant to the agreement, the plaintiff, on March 1, 1948 purchased residential property on Walnut Grove Road in Memphis for the sum of $72,820, and simultaneously placed a first deed of trust on the property in the full amount of the purchase price. On December 1, 1948 he placed a second deed of trust on the property in the amount of $26,592 representing the cost of improvements. The notes secured by both trust deeds were made payable to Union Planters National Bank and Trust Company, the indebtedness secured by both trust deeds aggregating $99,412.

The property was conveyed by the plaintiff and his wife to Southwestern on January 10, 1949 for a recited consideration of one dollar and "the encouragement, promotion and extension of the cause of education", subject to the reservation of life estates in favor of the plaintiff and his wife and subject to the liens of the two trust deeds referred to above. The deed also recited that it is "understood and agreed that the party of the second part does not assume, or is not to be held liable for the payment of the indebtedness secured" by the said trust deeds.

Before the property was conveyed the plaintiff made cash contributions to Southwestern aggregating $75,500: $44,500 in December 1947, $20,000 March 1, 1948, and $11,000 on December 1, 1948. Equal amounts were applied by Southwestern in partial payment of the indebtedness secured by the two outstanding trust deeds. Thus, it paid to the Union Planters National Bank and Trust Company, the holder of the indebtedness, the sum of $64,500 in March 1948, and $11,000 in December 1948.

These payments having been made on the indebtedness, there remained an outstanding indebtedness as of January 10, 1949, when the property was conveyed, in the amount of $23,912.

After the conveyance of January 10, 1949, the plaintiff on April 6, 1949, made still another contribution to Southwestern of $23,912, and on the same date Southwestern made payment of a like amount to Union Planters National Bank in final discharge of the lien indebtedness against the property. Pursuant to the ruling of December 19, 1947, the Internal Revenue Service did not question the contributions made by the plaintiff to Southwestern as allowable deductions for the respective years in which the contributions were made. But in the year 1949 the Director finally took the position that the payment made by Southwestern in that year in the amount of $23,912 to discharge the lien indebtedness on the property constituted taxable income to the plaintiff. He accordingly added that amount in making adjustments to the plaintiff's net income resulting in the assessment of additional income tax against the plaintiff for the year 1949 in the amount of $18,767.21.

It is disclosed that the entire property, at the time of the deed of conveyance of January 10, 1949, had a fair market value of $110,000, and it is also shown without dispute that the value of the remainder interest in the property which was conveyed to Southwestern, as of the time of conveyance, had a value of $44,101.20.

The possibility that the payment of $23,912 made by Southwestern in 1949 to discharge the lien indebtedness constituted a gift to the plaintiff has been considered but there appears to be no support in the record for that theory of the transaction. To sustain the payment as a gift would require the finding of a donative intent. Denman Tire & Rubber Co. v. Commissioner of Internal Rev-

enue, 6 Cir., 192 F.2d 261; Webber v. Commissioner of Internal Revenue, 10 Cir., 219 F.2d 834. But the undisputed testimony of officials of Southwestern is that the payment was made solely to protect its own interest in the property and not to make a gift of its funds. Indeed, since Southwestern was a charitable organization, it presumably had no legal authority to make such a gift of its assets. There is neither proof nor ground for an inference in the instant case that a gift was intended.

The undisputed evidence also negatives any legal obligation on the part of Southwestern to apply the plaintiff's contributions to the discharge of the lien indebtedness, notwithstanding the fact that the contributions were in effect actually so used. No such obligation was undertaken either in the agreement of December 1947 or in the deed of conveyance, and both the plaintiff and representatives of Southwestern testified that there was no covert understanding or agreement to that effect. It is probably fair to assume that there was an expectation on the part of both parties that the contributions would be so used or at least that Southwestern would apply its own funds in an equal amount to the discharge of the lien indebtedness, but this is altogether different from saying that it was legally bound to do so. If there had been a legal obligation, the result might be that the plaintiff in essence simply contracted with Southwestern for the use of his own funds for the payment of his own indebtedness and that he did not realize an economic benefit or gain from the payments.

In Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 504, 73 L.Ed. 918, it was held that payments by the corporation of an employee's taxes on the employee's income amounted to income to the employee, the court stating that "the discharge by a third person of an obligation to him is equivalent to receipt by the person taxed". In U. S. v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, it was ruled that the purchase by the Lumber Company of its own bonds in the open market for less than the par value of the bonds constituted taxable income. And in Commissioner of Internal Revenue v. Jacobson, 336 U. S. 28, 69 S.Ct. 358, 364, 93 L.Ed. 477, the taxpayer bought in bonds of which he was maker at less than face value. The issue before the Court was whether the extinguishment of an existing obligation constituted income to the taxpayer within the meaning of Section 22(a) of the Internal Revenue Code of 1939. In holding that such extinguishment constituted income, the Supreme Court stated that "his gains were comparable in their nature to those which he would have realized if a third party, pursuant to a contract, had paid off his indebtedness on these bonds for him to the extent of the discount at which he purchased them".

In keeping with these and other similar decisions, the defendant insists that Southwestern did not assume personal liability for the payment of the lien indebtedness, that the plaintiff remained personally and primarily liable therefor, and that the payment by Southwestern of the indebtedness necessarily resulted in income to the plaintiff because it extinguished or cancelled a debt which the plaintiff would otherwise have been required to pay. To meet this insistence, the plaintiff contends that while Southwestern did not assume personal liability it did acquire the property from the plaintiff by conveyance; that the payment of the mortgage debt by Southwestern was to protect its own interest in the property which exceeded the value of the payment made in 1949; and that no benefit was conferred upon the plaintiff in that year since he had already conveyed the property to Southwestern. The plaintiff also argues that the effect of the transaction was to make the plaintiff merely a surety on the note and that the subsequent extinguishment of the mortgage therefore resulted in no income to him.

A correct solution of the problem presented would appear to lie in a determination of the legal relationship exist-

ing between the parties as a result of the transfer to Southwestern of a remainder interest in the property "subject to" the lien indebtedness. It is undeniable that Southwestern did not assume personal liability. But it does not follow from that fact that the plaintiff, if he had been compelled to pay the indebtedness, would not have had recourse for reimbursement against the remainder interest in the property which had been conveyed to Southwestern.

The general rule as to the relative rights of the parties where property is conveyed subject to an existing mortgage is stated in 37 Am.Jur., Mortgages, Section 981, page 315:

"A grantor of mortgaged premises is clearly not a surety in regard to the mortgage debt, where he covenants, in conveying the equity of redemption, to pay such debt. Indeed, even in the absence of an express covenant on the part of the grantor, it has been declared that the grantor cannot properly be regarded as a surety of the grantee with respect to the mortgage debt, where there was no assumption on the part of the grantee to pay the mortgage debt, although the property was conveyed subject to the mortgage. However, there is authority for the rule, where there is a conveyance of mortgaged premises subject to the mortgage, that such premises become, as between the parties to the conveyance, the primary source for the satisfaction of the mortgage. In other words, the grantor, if personally liable for the payment of the debt, is, to the extent of the interest of the grantee in the land, a mere surety. Sometimes, the grantor is referred to as a 'quasi surety'."

In Zastrow v. Knight, 56 S.D. 554, 229 N.W. 925, 72 A.L.R. 379, it was held that to the extent of the value of the security properly applicable to the mortgage debt, the mortgagor and the grantee stand in a relation one to another which, while not a true suretyship, is neverthe-less equitably analogous thereto and subject to the operation of the same principles. Substantially the same rule is stated in 37 Am.Jur., Mortgages, Section 1102, page 381:

"In the event of a conveyance of mortgaged property subject to the mortgage, it is generally presumed that the amount of the mortgage has been deducted from and is a part of the purchase price. It is consequently frequently asserted that mortgaged property transferred subject to the mortgage is the primary source for the satisfaction of the mortgage. The ordinary significance of this statement is that as between the parties to the transfer, and to the extent of the grantee's interest in the property, the grantee is a principal and the grantor a surety."

While no decision on the exact question has been found in Tennessee, there is no reason to doubt that the courts of that state would follow the same rule which appears to be supported, in the last analysis, by giving to the limitation "subject to" in a deed of conveyance a meaning and effect in keeping with the intention of the parties. If property at the time of conveyance is encumbered by a mortgage and is conveyed subject to the mortgage, the apparent intention of the parties, in the absence of language indicating a contrary purpose, is to continue the mortgage lien in the same status which it occupied before the conveyance, with the result that the property itself remains as the primary security for the indebtedness.

In the instant case while Southwestern incurred no personal liability there is nothing to indicate that the parties did not intend the limitation "subject to" to have the effect of continuing upon the remainder interest conveyed to Southwestern its pro rata share of the liability for payment and discharge of the lien indebtedness. So viewing the transaction, if plaintiff had been compelled to pay the entire debt himself, he would

have had the right to obtain reimbursement on a prorated basis, not against Southwestern personally, but against the remainder interest in the property. To that extent he was a surety; and to the same extent the payment of the indebtedness by Southwestern resulted in no income to him. By the same token, to the extent that the payment of the lien indebtedness by Southwestern discharged the lien upon the life estates which were retained by the plaintiff, he realized an economic gain or benefit. As to that portion of the payment an indebtedness upon his own estate was cancelled or extinguished, and if he had made the payment himself he would have had no right of recourse as he was not a surety.

From this analysis of the case the Court concludes and finds that the plaintiff realized from the 1949 payment of $23,912 a taxable income in the ratio that the value of the retained life estates bears to the value of the entire property as of April 6, 1949, and that no income was realized from that proportion of the payment allocable to the value of the remainder interest. The record discloses the value of the remainder interest in the property as of January 10, 1949, but does not disclose the value as of April 6, 1949, when the final mortgage payment was made by Southwestern. Doubtless the parties can agree with respect to the value of the remainder interest and the value of the reserved life estates as of that date, since the determination of such values will only require application of an approved actuarial table to material facts developed by the evidence.

As the 1949 income tax return was a joint return filed by the plaintiff and his wife, Minna G. Herff, and as she was made a party to the action by third party complaint, this opinion is equally applicable to her.

A judgment will be submitted to the Court settling and determining the rights of the plaintiff and his wife to a recovery in conformity with the findings and conclusions herein made, the costs to be divided equally between the parties.